**Douglas R. PAGE, Plaintiff,**

v.

**Richard SHELBY, et al., Defendants.**

**Civil Action No. 97–0068(JHG).**

United States District Court,
District of Columbia.

March 4, 1998.

**24**

Douglas R. Page, Walnut Creek, CA, pro se.

Thomas B. Griffith, Washington, DC, Stephen Russell Martin, U.S. Attorney's Office, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

In this action, plaintiff has sued 105 individuals comprising the entire membership of the United States Senate, the Secretary of the Senate, the Senate's Sergeant at Arms, and the Parliamentarian of the Senate (collectively, the "Senate defendants") plus the Secretary of the Treasury and the Treasurer of the United States ("defendants Rubin and Withrow"). Presently before the Court are the Motion of Senate Defendants to Dismiss and defendants Rubin and Withrows' Motion to Dismiss. Because the Court finds that plaintiff Page lacks standing to raise his challenge to Rule XXII of the Standing Rules of the Senate (the "cloture rule"), both motions will be granted.

### I. Background

This is the second time Mr. Page has sued the United States Senators in this Court seeking to have the Senate's cloture rule declared unconstitutional. *See Page v. Dole*, Civ. Action No. 93–1546(JHG) (D.D.C. Aug. 18, 1994), *vacated as moot*, No. 94–5292, 1996 WL 310132 (D.C.Cir. May 13, 1996) (per curiam), *dismissed on remand* (D.D.C. Sept. 9, 1996). Rule XXII of the Standing Rules of the Senate, the "cloture rule," provides that:

> ... at any time a motion signed by sixteen Senators, to bring to a close the debate upon any measure, motion, other matter pending before the Senate, or the unfinished business, is presented to the Senate, the Presiding Officer, or clerk at the direction of the Presiding Officer, shall at once state the motion to the Senate, and one hour after the Senate meets on the following calendar day but one, he shall lay the motion before the Senate and direct that the clerk call the roll, and upon the ascertainment that a quorum is present, the Presiding Officer shall, without debate, submit to the Senate by a yea-and-nay vote the question:
>
> "Is the sense of the Senate that the debate shall be brought to a close?"

And if the question shall be decided in the affirmative by three-fifths of the Senators duly chosen and sworn—except on a measure or motion to amend the Senate rules, in which case the necessary affirmative vote shall be two-thirds of the Senators present and voting—then said measure, motion, or other matter pending before the Senate, or the unfinished business, shall be the unfinished business to the exclusion of the all other business until disposed of....

Standing Rules of the Senate Rule XXII § 2. In short, the rule requires that three-fifths, or 60, Senators vote to limit the time for debate on a pending matter ("invoking cloture"), notwithstanding the traditional right of each senator to speak on an issue for as long as he or she chooses.[1]

In his previous action challenging this rule (referred to by Fisk & Chemerinsky, *see supra* note 1, as "... the only known lawsuit challenging the constitutionality of the filibuster ..."), Mr. Page, "a registered Democrat," claimed that the Senate Republican minority had denied him equal protection of the laws by voting in April 1993 against closing debate "for the sale [sic] purpose of preventing enactment of President Clinton's 'Economic Stimulus Package' which had been passed by a majority of the House of Representatives, was desired by the President, and was supported by at least a simply [sic] majority of the Senators." First Amended Compl., *Page v. Dole*, Civ. Action No. 93–1546(JHG) (Oct. 15, 1993). In addition, he claimed that the Republican minority's repeated threats "to filibuster again so as to prevent enactment of or seriously weaken tax, health, and campaign finance legislation" similarly frustrated the majority will of the sovereign people and diluted the power of his vote. *Id.*

After full briefing by all parties, this Court dismissed Mr. Page's first suit on the ground that he lacked standing to challenge Senate Rule XXII. *See* Mem.Op. and Order, Civ. Action No. 93–1546(JHG) (D.D.C. Aug. 18, 1994), *vacated as moot*, 1996 WL 310132

(D.C.Cir. May 13, 1996). Specifically, this Court found that Mr. Page failed to show that he personally suffered or would suffer actual injury, *id.* at 9; that he failed to demonstrate causal connection between his alleged injury and Rule XXII, *id.* at 11; and that it was unlikely that any injury would be redressed by a ruling in his favor, *id.* at 17. Mr. Page appealed that ruling. However, during the pendency of his appeal, Republicans became the majority party in the Senate. Accordingly, because "his complaint was framed in terms of a dilution of the Democratic majority's vote by the Republican minority's use of Senate Rule XXII [and] ... the Senate no longer has a Democratic majority," the United States Court of Appeals for the District of Columbia Circuit ordered that the complaint be dismissed as moot. *Page v. Dole*, 1996 WL 310132 (D.C.Cir. May 13, 1996).

Mr. Page's complaint in the current action overcomes the mootness problem of his previous suit by framing his argument more generally so that it does not depend upon a particular party holding a majority of the seats in the Senate. He now alleges that "Senate Rule XXII unconstitutionally dilutes PAGE'S voting power" because if he "votes for Democratic Senators, 41 Republican Senators can and do obstruct law making by a simple majority" and if he "votes for Republican Senators, 41 Democratic Senators can and do obstruct the constitutional law making process by a simple majority." Compl. ¶ 8. He further complains that "[n]o matter how PAGE votes, a mix of 41 Republican and Democratic Senators from the least populous States, can and do obstruct federal law making by a simple majority of a quorum, by utilizing Senate Rule XXII." *Id.* At bottom, Mr. Page is distressed by the fact that 41 Senators voting against cloture can "obstruct a vote on the merits, [and thereby] unconstitutionally dilute Page's voting power and deprive Page of the Constitutional right to be governed by some simple majority of a quorum in the Senate." *Id.* at ¶ 9.

---

1. For a thorough history of the Senate's cloture rule, *see* Mot. of Senate Defs. to Dismiss pp. 5–16. See also Catherine Fisk & Erwin Chemerinsky, *The Filibuster*, 49 Stanford L.Rev. 181, 209–213 (1997).

To redress these alleged constitutional wrongs, Mr. Page suggests that the Court rewrite Senate Rule XXII by substituting "And if that question shall be decided in the affirmative by *a simple majority of a quorum Senators [sic] plus the vote of the Vice President, if the votes be equally divided . . .*" for the current phrase "And if that question shall be decided in the affirmative by *three-fifths of the Senators duly chosen and sworn . . . .*" *Id.* at p. 6 ¶ 2. Mr. Page also requests that the Court order the Senate to henceforth close debate by a simple majority of a quorum, *id.* at p. 7 ¶ 3, and that defendants Rubin and Withrow "suspend the pay of those Senators participating in violation of the Court's Orders," *id.* at p. 7 ¶ 4.

## II. Discussion

The Senate defendants' advance four reasons why this Court should grant their motion to dismiss: (1) Mr. Page lacks standing to raise this issue; (2) the Speech or Debate Clause bars suits such as this one; (3) the issue Mr. Page raises is nonjusticiable; and (4) the complaint fails to state a claim upon which relief can be granted. In their motion, defendants Rubin and Withrow likewise argue that Mr. Page lacks standing and that this complaint fails to state a claim upon which relief can be granted.

### A. Standard of Review

In considering a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kenneda v. United States*, 880 F.2d 1439, 1442 (D.C.Cir.1989). The factual allegations of the complaint must be presumed true and liberally construed in favor of plaintiff. *Shear v. National Rifle Ass'n*, 606 F.2d 1251, 1253 (D.C.Cir.1979); *see also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357, p. 304 (1990). The plaintiff is enti-

tled to all favorable inferences which may be drawn from those allegations. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### B. Analysis

By challenging the Senate's cloture rule in this action, Mr. Page is attempting to involve the federal courts in the on-going public debate over the efficacy and merits of the Senate's debate practices, particularly its use of filibuster to delay or prevent a Senate vote on controversial political issues.[2] However, federal courts are not empowered to resolve every current public debate; under Article III of the Constitution, the federal courts have jurisdiction over a dispute only if it is a "case" or "controversy." U.S. Const. art. III, § 2, cl. 1; *see Raines v. Byrd*, —— U.S. ——, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849 (1997). In fact, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines*, 117 S.Ct. at 2317 (internal citations omitted). Under the rubric of Article III jurisprudence, the federal courts have developed a cluster of doctrines such as standing, mootness, ripeness, political question, and the like by which to give meaning to Article III's case-or-controversy requirement. *Animal Legal Defense Fund, Inc. v. Glickman*, 130 F.3d 464, 467 (D.C.Cir.1997) (citations omitted); *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C.Cir.1996). These doctrines serve to limit the federal courts' docket to those disputes traditionally thought to be capable of resolution through the judicial process and to restrict the federal courts to a role consistent with a system of separated powers. *Animal Legal Defense Fund, Inc.*, 130 F.3d at 467. The doctrine of standing governs the outcome in this case.

Standing is "built on a single basic idea—the idea of separation of powers." *Al-*

---

2. *See, e.g.*, Catherine Fisk & Erwin Chemerinsky, *The Filibuster*, 49 Stan.L.Rev. 181 (1997); Bill Dauster, *It's Not 'Mr. Smith Goes to Washington' (Senate Filibusters)*, Wash. Monthly, Nov. 1, 1996, at 34; Sarah A. Binder, *Senate Ensnarld by Fili-* busters, Clev Plain Dealer, July 19, 1996, at 11B; Morton H. Kaplan, *Filibuster's Turnabout No Fair Play*, Chi Sun-Times, July 7, 1995, at 36; Eric Zorn, *Senate's Filibusters Make Poor Theater, Bad Government*, Chi Trib, June 22, 1995, at 1.

*len v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Standing promotes separation of powers by preventing lawsuits by litigants with only an academic interest in the outcome of the case and ensuring that a specific controversy is before the court and that that controversy is being litigated by an interested advocate. *See, e.g., United States v. Richardson*, 418 U.S. 166, 192, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (Powell, J., concurring); *Baker v. Carr*, 369 U.S. 186, 204–08, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Specifically, the standing doctrine requires would-be federal litigants to demonstrate (1) an injury in fact; (2) which is caused by, or is fairly traceable to, the alleged unlawful conduct; and (3) which is likely to be redressed by a favorable decision of the court. *Animal Legal Defense Fund, Inc.*, 130 F.3d at 467; *see also Raines*, 117 S.Ct. at 2317; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Skaggs v. Carle*, 110 F.3d 831 (D.C.Cir.1997). The standing inquiry must be "especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines*, 117 S.Ct. at 2317–18.

■ The first requirement—injury in fact—requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citations omitted). Therefore, to satisfy this requirement, Mr. Page must show "that he has sustained or is immediately in danger of sustaining some direct injury as a result of [Senate Rule XXII's] enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Frothingham v. Mellon*, 262 U.S. 447, 488–89, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). If he asserts only the "generalized interest of all citizens in constitutional governance," he has alleged only an abstract injury insufficient to confer standing. *See Raines*, 117 S.Ct. at 2324 (Souter, J., concurring in judgment); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Vindication of the public interest in governmental observ-

ance of the Constitution and the law is the function of Congress and the President, not the judiciary. *Lujan*, 504 U.S. at 576; *see also Crockett v. Reagan*, 558 F.Supp. 893, 898 (D.D.C.1982) (JHG) (concluding that fact-finding necessary to determine violation of War Powers Resolution was properly function of Congress not judiciary), *aff'd* 720 F.2d 1355 (D.C.Cir.1983), *cert. denied* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984).

■ Mr. Page alleges that Senate Rule XXII injuries him in two ways. First, he claims that the rule unconstitutionally dilutes his voting power because his two Senators are deprived "of equal suffrage in the Senate when 41 Senators from other states choose to prevent a vote by a simple majority of a quorum." Compl. ¶ 8. Second, he argues that Senate Rule XXII deprives him of his "constitutional right to be governed by *some simple* majority of a quorum," Compl. ¶ 5, because "[n]o matter how Page votes, a mix of 41 Republican and Democratic Senators from the least populous States, can and do obstruct federal lawmaking by a simple majority of a quorum," Compl. ¶ 8.

There are fatal flaws in Mr. Page's arguments. Most importantly, he cannot show that he has suffered or will suffer actual injury. It is well-settled that a plaintiff must "show that he personally has suffered some actual or threatened injury." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (internal citations omitted). A plaintiff must specifically allege "that the challenged practices harm *him*" and that he has experienced a "demonstrable, particularized injury." *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In this case, Mr. Page has not demonstrated that he has sustained or will imminently sustain direct harm as a result of Senate Rule XXII. This Court cannot find that a litigant has standing based solely on his speculation that, no matter which party's senatorial candidates he votes for, Senators of the other political party will invoke Rule XXII to prevent the passage of unspecified legislation favored by Mr. Page. Mr. Page asserts that Rule XXII

"drastically diminishes [his] voting power to obtain legislation he desires."[3] Yet he does not provide examples of the types of legislation he favors and does not indicate how he personally has been or will be injured if that legislation fails to become law.

Of particular importance, to constitute injury in fact, the harm alleged must be actual and imminent, not conjectural and speculative. Assuming *arguendo* that the filibuster remains a viable tool of a minority of Senators bent on blocking all future legislation favored by Mr. Page, he cannot show that he will suffer any *personal* harm should this hypothetical legislation not come to a vote. His complaint contains unspecified allegations regarding "legislation he desires"—precisely the kind of vague, conjectural and hypothetical harm which cannot confer standing. By the very nature of his claim, Mr. Page does not and cannot name particular bills that will be the subject of future allegedly unconstitutional filibusters.

In addition, Mr. Page's allegations of injury are sharply undercut by the Supreme Court's recent decision in *Raines v. Byrd*, — U.S. —, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). In that case, six Members of Congress challenged the constitutionality of the Line Item Veto Act. *Id.* at 2316. On expedited appeal from the District Court, the Court held that plaintiff Congressmen lacked standing to challenge the Act because their alleged injury was not personal, but was common to all members of Congress, *id.* at 2318; because the injury amounted to a loss of political power rather than the loss of a private right, *id.*; and because such an abstract dilution of institutional legislative power was an insufficient injury, *id.* at 2320–21. Based on the Court's *Raines* reasoning, it might well be that Mr. Page's Senators would themselves lack standing to challenge the cloture rule in federal court because any injury arguably resulting from that rule is common to all Senators, amounts to a loss of political power, and is essentially an abstract dilution of institutional legislative power. Any injury to Mr. Page is even more attenuated than the injury to his Senators and, therefore, certainly insufficient to support standing.

Finally, Mr. Page's claims of injury are insufficient because the votes of 51 Senators are still all that is necessary to enact any particular legislation. As illustration, in *Skaggs v. Carle*, 110 F.3d 831, 833 (D.C.Cir. 1997), several Representatives, their constituents, and the League of Women Voters challenged a House Rule that required a three-fifths majority to pass a federal income tax rate increase. The Court focused on the fact that the House had routinely voted to waive the three-fifths requirement and thus had approved income tax rate increases by a simple majority. *Id.* at 835. Because the Court found that the votes of 218 Members remained sufficient in practice to pass income tax rate increase legislation, it found that the injury alleged was only conjectural or hypothetical and thus insufficient to support standing. *Id.* at 836. The *Skaggs* opinion implies that a House or Senate rule requiring a super-majority for *passage of legislation*, if that rule were strictly enforced, might result in sufficient constitutional injury to support standing by some plaintiff. However, Mr. Page is not challenging a super-majority requirement for legislative passage, but an internal, procedural rule requiring a super-majority vote *to close debate*.[4] Mr. Page has not suffered constitutional injury.

Assuming *arguendo* that Mr. Page alleged sufficient injury, the Court proceeds to ana-

---

3. Compl. ¶ 8. Although Mr. Page refers to his alleged injury as dilution of his vote, the vote dilution cases he cites are not applicable in this situation. For example, *Michel v. Anderson*, 14 F.3d 623, 625–26 (D.C.Cir.1994), is distinguishable because in that case each Representatives' voting power was clearly diminished when the House conferred voting status on non-members of the House of Representatives. Likewise, *Vander Jagt v. O'Neill*, 699 F.2d 1166 (D.C.Cir.1982), is distinguishable because the procedural rules at issue in that case (the House Democratic majority's method of allocating committee memberships) clearly discriminated against the Republi-

can minority representatives. In this case, no additional persons have been given a vote of any type in the Senate and Mr. Page does not allege that the cloture rule discriminates against any discrete group of Senators.

4. Chief Judge Edwards dissenting opinion in *Skaggs* clearly recognized this distinction. *See Skaggs*, 110 F.3d at 846 & n. 14 (Edwards, C.J., dissenting) ("Requiring a supermajority to pass a bill into law can be distinguished from procedural rules—like the Senate cloture rule—that require a supermajority to bring an issue to a vote. Although such supermajority requirements may

lyze the remaining two elements of standing. To satisfy the causation prong of the standing analysis, a plaintiff must show that the injury "fairly can be traced to the challenged action of the defendant[s], and not injury that results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The chain of causation between Rule XXII and any possible injury suffered by Mr. Page stemming from the failure of unspecified legislation to be enacted is far too remote to satisfy this second element of standing. There is no guarantee that, but for the cloture rule, the legislation favored by Mr. Page would have passed the Senate; that similar legislation would have been enacted by the House of Representatives; and that the President would have signed into law the version passed by the Senate. There are too many independent actors and events in the span between a cloture vote and the failure to pass legislation to characterize the connection as direct. Legislation of the precise type favored by Mr. Page may not even be introduced into both Houses and, if it is, may not pass both Houses or may fail to be signed by the President. Moreover, the failure to close debate on an individual cloture vote does not necessarily prevent the legislation in question, or parts of that legislation, from being enacted. The attempt to close debate may succeed on a subsequent cloture vote or a part of the bill may be incorporated into other legislation that is ultimately enacted.

With regard to the third standing prong, it is unlikely that Mr. Page's injury would be redressed by a favorable ruling. Even were this Court to declare Senate Rule XXII unconstitutional, it would be inappropriate for this Court to rewrite the Senate rules as Mr. Page suggests. *See* U.S. CONST. Art. I, sec. 5, cl. 2 ("Each House may determine the Rules of its Proceedings . . ."). Therefore, were Rule XXII declared unconstitutional, the Senate could return to its former practice of allowing unlimited debate unless there existed unanimous consent to close debate. Clearly, Mr. Page would not favor that re-

sult. The measures that Mr. Page suggests the Court should take—rewriting the Senate rules and withholding the Senators' pay—raise serious separation of powers concerns.

### III. Conclusion

Because Mr. Page lacks standing to bring this action, it must be dismissed. Moreover, because he lacks standing, it is unnecessary for the Court to address the defendants' alternative bases for dismissal. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (constitutional questions should not be decided if the case may be disposed of on other grounds); *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1171 n. 8 (D.C.Cir. 1982). Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the both the Senate Defendants Motion to Dismiss and defendants Rubin and Withrows' Motion to Dismiss are granted. This case stands dismissed.

IT IS SO ORDERED.

---

hinder or help a bill to become law, these procedural rules do not explicitly conflict with the

presentment clause requirement that a bill that has passed be presented to the President.").