**John HOFFMAN and Michael Hahalyak, Plaintiffs,**

v.

**James JEFFORDS, Defendant.**

**No. 01–1190 (RCL).**

United States District Court, District of Columbia.

Dec. 13, 2001.

John Hoffman, Pittsburgh, PA, Pro se.

Michael Hahalyak, Murrysville, PA, Pro se.

Morgan John Frankel, Patricia Mack Bryan, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on the defendant's motion to dismiss the plaintiffs' amended complaint and the plaintiffs' motion for summary judgment. Specifically, the defendant argues that the amended complaint should be dismissed pursuant to Rule 12(b)(1) because the Court lacks jurisdiction to adjudicate the plaintiffs' claims, pursuant to Rule 12(b)(5) because of insufficiency of process, and pursuant to Rule 12(b)(6) because the plaintiffs have failed to state a claim upon which relief can be granted. The plaintiffs, in contrast, argue that they are entitled to judgment as a matter of law. After a thorough review of the amended complaint, the parties' memoranda, and the applicable law, the Court finds that the defendant's motion should be GRANTED and the plaintiffs' motion should be DENIED.

## I. BACKGROUND

The plaintiffs in this case, two Republicans from Pennsylvania, seek judicial review of Senator James M. Jeffords' decision to leave the Republican party. In the amended complaint, the plaintiffs claim that Senator Jeffords violated Vermont election laws and the Fourteenth and Seventeenth Amendments to the United States Constitution by changing his political party affiliation after being elected as a Republican. The plaintiffs want this Court to order Senator Jeffords to reinstate his affiliation with the Republican party and to enjoin him from caucusing with the Democratic members of the Senate.

The voters of Vermont first elected James M. Jeffords to the United States Senate in 1988. After being re-elected in 1994, Senator Jeffords again sought and won the Republican nomination in Vermont's September 12, 2000 primary election. Senator Jeffords retained his seat in the Senate by winning the November 7, 2000 general election, where he ran as the Republican nominee. On January 3, 2001, the President of the Senate presented the Senate with a certificate of election signed by the Governor of Vermont certifying Senator Jeffords' election to a new six-year term. At the opening of the 107th Congress, Senator Jeffords returned as a member of the Republican Conference, which encompassed all Republican members of the Senate. In fact, Senator Jeffords had at all times during his tenure in the Senate caucused with the other Republican members.

On May 24, 2001, however, Senator Jeffords announced his decision to leave the Republican party, become an Independent, and caucus with the Senate Democrats for organizational purposes. Senator Jeffords' decision to caucus with the Senate Democrats was particularly important—and controversial—because the 2000 elections resulted in a Senate composed of 50 Republicans and 50 Democrats. The 2000 elections thus yielded, for only the third time in American history, an equal balance of power between the two principal political parties.[1]

Even though there was an equal number of Democrats and Republicans in the Senate, the Republicans had gained working control of the Senate because of the Vice President's power, as President of the Senate, to cast tie-breaking votes. Accordingly, Republicans took working control of the Senate after Chief Justice Rehnquist swore in Richard B. Cheney, who is a

---

1. The Senate was also equally divided in 1881 and 1953.

Republican, as Vice President on January 20, 2001. Moreover, pursuant to an organizational agreement entered into by both parties, an equal number of Republican and Democratic members served on all committees, with Republican senators assuming the committee chairs. After separate deliberations by the Republican and Democratic caucuses, committee members from each party were appointed on January 25 and January 30, 2001.

By changing political parties, Senator Jeffords enabled the Democratic party to assume working control of the Senate. On June 5, 2001, after returning from the Memorial Day recess, Senator Jeffords attended the Democrats' weekly policy caucus luncheon for the first time, and, on the next day, the Democrats took control of the Senate. On June 6, 2001, the presiding officer recognized Senator Tom Daschle, a Democrat, as the leader of the party with dominant representation in the Senate. As the majority party, the Democrats elected a new President pro tempore and assumed the chairs of all Senate committees. Additionally, pursuant to a new organizing resolution, the Democrats gained a one-member majority on all committees except for the Select Committee on Ethics, which always has equal party representation.

The plaintiffs, who describe themselves as registered Republicans, filed the instant suit shortly after Senator Jeffords announced his decision to switch political parties. In the amended complaint, the plaintiffs state that jurisdiction is founded on diversity of citizenship and because of federal questions arising under the Fourteenth and Seventeenth Amendments to the United States Constitution. The plaintiffs allege that they "have been adversely impacted in that the Republican program to be ushered in by the Republican party nationally has been seriously obstructed by the defendant's unauthorized act in altering party affiliation." They further claim that Senator Jeffords' decision to change parties "destroys the confidence of the electorate," "destroys the foundation of good government by lowering the standard of integrity of its representatives," "promotes party raiding which would seriously weaken the stability of the elective process," "undermines the very purpose of anti-raiding statutes," "eliminates the heart of a well balanced political party," and was without the approval of the individuals that voted for him in the Vermont elections. The plaintiffs have moved for summary judgment on each of these claims.

In response to the amended complaint, Senator Jeffords filed a motion to dismiss on September 10, 2001. In the motion, he argues that there are several independent bases upon which this Court should dismiss the plaintiffs' amended complaint. Senator Jeffords first contends that the action should be dismissed because the Court does not have jurisdiction to adjudicate the plaintiffs' claims. In particular, Senator Jeffords asserts that the plaintiffs lack standing to bring this lawsuit and that the Speech or Debate Clause of the Constitution bars their claims against him. Next, Senator Jeffords argues that the amended complaint should be dismissed because the plaintiffs failed to serve properly the U.S. Attorney for the District of Columbia, as required by Rule 4(i) of the Federal Rules of Civil Procedure. Finally, Senator Jeffords contends that the action should be dismissed because it is nonjusticiable under the political question doctrine.

## II. ANALYSIS

The Supreme Court has made it clear that before a federal court can consider the merits of a claim, the person seeking to invoke the jurisdiction of the

court must establish that they have standing to initiate the lawsuit. *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). The burden of showing that this standing requirement is met rests squarely on the party bringing the action. *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (finding that "petitioners in this case must allege facts essential to show jurisdiction."). In order to show that standing exists, "the party who seeks the exercise of jurisdiction in his favor" must clearly "allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Id.* If the plaintiff fails to make the necessary allegations, then the Court must find that the party does not have standing to bring the lawsuit. *Id.* (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). *See also U.S. v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Moreover, once a court finds that a plaintiff does not have standing to initiate an action, it must dismiss the complaint. *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (noting that if "the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.").

 Courts should not consider the merits of the plaintiff's claim in determining whether he has standing to bring the lawsuit. *Id.* at 500, 95 S.Ct. 2197 (recognizing that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal"); *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (stating that "we thus put aside for now Whitmore's Eighth Amendment challenge and consider whether he has established the existence of a 'case or controversy.' "). In fact,

"[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth,* 422 U.S. at 501, 95 S.Ct. 2197; *American Federation of Government Employees, AFL—CIO v. Pierce,* 697 F.2d 303, 305 (D.C.Cir. 1982) (noting that "[f]or purposes of the standing issue, we accept as valid Congressman Sabo's pleaded legal theory.").

Based on this legal standard, the Court will first address the threshold jurisdictional issue of standing. In making that determination, the Court will assume that the facts alleged in the complaint are true. Only after finding that the plaintiffs have standing will the Court evaluate the other issues raised in the defendant's motion to dismiss and the plaintiffs' motion for summary judgment. *Warth,* 422 U.S. at 498, 95 S.Ct. 2197 (recognizing that standing "is the threshold question in every federal case, determining the power of the court to entertain the suit."). If, however, the Court concludes that the plaintiffs do not have standing, it will dismiss the complaint without any further discussion of the other issues raised in the two motions. *FW/PBS Inc.,* 493 U.S. at 230, 110 S.Ct. 596 ("We do not reach the merits of the adult entertainment and adult cabaret petitioners' challenges to the civil disability provision, § 41A–5(a)(10), and the provision disabling individuals residing with those whose licenses have been denied or revoked, § 41A–5(a)(5), because petitioners have failed to show they have standing to challenge them."); *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 475–76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (stating that "of one thing we may be sure: Those who do not possess Art.

III standing may not litigate as suitors in the courts of the United States.").

### A. *Standing*

Article III, § 2, of the United States Constitution explicitly provides that federal courts may only adjudicate actual "Cases" or "Controversies." *Arizonans For Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (noting that "the Constitution confines federal courts to the decision of 'Cases' or 'Controversies.' "); *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (same). Accordingly, "[u]nder the rubric of Article III jurisprudence, the federal courts have developed a cluster of doctrines such as standing, mootness, ripeness, political question, and the like by which to give meaning to Article III's case-or-controversy requirement." *Page v. Shelby*, 995 F.Supp. 23, 26 (D.D.C.1998). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (finding that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). All of these doctrines place limitations on the jurisdiction of federal courts. *Allen*, 468 U.S. at 750, 104 S.Ct. 3315. Specifically, "[i]n its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth*, 422 U.S. at 498, 95 S.Ct. 2197. That is, "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.*

■■ In order to establish standing to sue under Article III of the Constitution, plaintiffs must demonstrate that: (1) they have suffered an injury that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the conduct of which they complain; and (3) the injury is likely to be redressed by a court decision in their favor.[2] *Skaggs v. Carle*, 110 F.3d 831, 834 (D.C.Cir.1997) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). The plaintiffs have the burden of establishing each of these elements. *Id.* Moreover, "[s]ince they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 555, 112 S.Ct. 2130. This means that for purposes of a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient since the court assumes that general allegations in the complaint embrace specific facts that are necessary to support the claim. *Id* at 561, 112 S.Ct. 2130.

---

**2.** To the extent some of the plaintiffs' claims are based on Vermont election law, the Court must look to that state's law to determine whether the plaintiffs have standing to bring those claims. *Seguros Comercial America v. American President Lines, Ltd.*, 105 F.3d 198 (5th Cir.1996) (noting that "a federal court exercising diversity jurisdiction must look to state law to determine standing to sue[.]"). There is, however, no distinction between federal law and Vermont law regarding standing. *Agency of Natural Resources v. United States Fire Ins. Co.*, 2001 WL 1474201, —— A.2d —— (2001) (noting that the Supreme Court of Vermont has adopted the test articulated by the Supreme Court of the United States concerning standing); *Parker v. Milton*, 169 Vt. 74, 726 A.2d 477, 480 (Vermont 1998) (same). Thus, the analysis on the issue is the same for all of the plaintiffs' claims.

1. *Personally Suffered A Particularized Injury That Is Not Conjectural*

a) *Particularized Injury*

■ It is by now well established that "at an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[.]" *Valley Forge Christian College,* 454 U.S. at 472, 102 S.Ct. 752; *Animal Legal Defense Fund v. Glickman,* 154 F.3d 426, 433 (D.C.Cir.1998) (noting that "the key requirement . . . is that the plaintiff have suffered his injury in a personal and individual way[.]"). As a result, the Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a personal stake in the alleged dispute, and that the alleged injury is particularized as to him." *Raines v. Byrd,* 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). In fact, the Supreme Court has explicitly stated that "[b]y particularized, we mean that the injury must affect the plaintiff in a personal and individual way." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130. Thus, for example, in the equal protection context, "even if a governmental actor is discriminating on the basis of race, the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." *U.S. v. Hays,* 515 U.S. 737, 743–44, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 167, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (finding that "in this case appellee was not injured by Moose Lodge's membership policy since he never sought to become a member."). Moreover, this Court recently ruled that a plaintiff who was challenging the Senate's cloture rule did not have standing to bring the suit because he failed to demonstrate that he has sustained or will immediately sustain direct harm as a result of the rule. *Page,* 995 F.Supp. at 27–28. In that case, the court specifically noted that the plaintiff "does not indicate how he personally has been or will be injured if" legislation he favors "fails to become law." *Id.* at 28.

■ Injuries that are suffered by the public at large are not particularized injuries within the confines of Article III. The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan,* 504 U.S. at 573–74, 112 S.Ct. 2130; *Valley Forge,* 454 U.S. at 482–83, 102 S.Ct. 752 (noting that the Supreme Court "repeatedly has rejected claims of standing predicated on the right possessed by every citizen to require that the Government be administered according to law[.]"); *Massachusetts v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) (same). For instance, in *Crist v. Commission on Presidential Debates,* the Second Circuit noted that several circuits have "concluded that a voter fails to present an injury in fact when the alleged harm is abstract and widely shared[.]" *Crist,* 262 F.3d 193, 195 (2d Cir.2001). Moreover, the First Circuit has specifically held that "the harm done to the general public by corruption of the political process is not a sufficiently concrete, personalized injury to establish standing." *Becker v. FEC,* 230 F.3d 381, 389–90 (1st Cir.2000).

■ The Court finds that in the instant case the plaintiffs have failed to show that they personally have suffered or will suffer any injury as a result of Senator Jeffords' decision to leave the Republican party.

First, with respect to the plaintiffs' claim regarding the Republican national program, the Court finds that while the plaintiffs may have sincere beliefs concerning such legislation, it does not follow that they will personally be injured if Congress fails to enact the legislation. For instance, in their opposition to the motion to dismiss, the plaintiffs cite abortion rights and school prayer as two such issues that they think were adversely impacted by Senator Jeffords' decision to switch parties. The plaintiffs do not, however, demonstrate how they personally will be affected by the lack of legislation relating to these issues. That is, the plaintiffs may feel strongly about abortion rights and school prayer, but based on the amended complaint there is no indication that they have any personal stake in potential legislation concerning the issues.[3]

Second, with respect to the plaintiffs' claims concerning the violation of Vermont election laws, the plaintiffs have again failed to show how they personally are injured by this alleged violation of the law. Plaintiffs did not, nor could they, vote in either the primary or general election in which Senator Jeffords ran for office. Consequently, they had absolutely no personal stake whatsoever in the political party he was affiliated with at the time of the elections. The plaintiffs may have wanted Senator Jeffords to be re-elected because he was a Republican, but that does not mean that they have personally suffered an injury as the result of him changing parties after the election.

Third, with respect to the claims dealing with the "right to freedom of association," the plaintiffs have utterly failed to allege how their rights have been violated by Senator Jeffords' decision to change par-

ties. In fact, the plaintiffs have made no effort to explain how their individual right to associate with others was affected by Senator Jeffords' decision to leave the Republican party. Indeed, the Court sees no basis upon which the plaintiffs could claim that their First or Fourteenth Amendment rights have been violated. As such, the Court finds that they have not suffered any personal injury in this regard.

Finally, with respect to the plaintiffs' assertion that Senator Jeffords' decision has diminished the confidence of the electorate, destroyed the foundation of good government, promoted party raiding, and undermined the purpose of the anti-raiding statutes, the Court finds that the plaintiffs have not demonstrated how they are personally affected by such events in a way different than the public at large. To satisfy the first requirement for standing, it is not enough for the plaintiffs merely to allege that Senator Jeffords has destroyed the foundation of good government and promoted party raiding. Even if those allegations are true, the plaintiffs still must show that they personally were affected by such events in a manner different from the public at large. *Lujan,* 504 U.S. at 573–74, 112 S.Ct. 2130; *Becker,* 230 F.3d at 389–90. They have clearly failed to do so in this case.

*b) Actual Injury*

 In order to have standing, a plaintiff must allege an injury that is "distinct and palpable, and not abstract or conjectural or hypothetical." *Allen,* 468 U.S. at 751, 104 S.Ct. 3315. That is, "to constitute injury in fact, the harm alleged must be actual and imminent, not conjectural and speculative." *Page,* 995 F.Supp. at 28. Thus, for example, in *Page v. Shelby,* this

---

**3.** It is also doubtful that such an interest would be a legally cognizable injury for purposes of Article III. In other words, it is doubtful that anyone has a right to certain legislation being enacted by Congress.

Court ruled that a complaint containing unspecified allegations regarding legislation desired by the plaintiff is "precisely the kind of vague, conjectural and hypothetical harm which cannot confer standing." *Id.* Moreover, as the First Circuit recognized in *Becker*, voters' "concern for the corruption of the political process is not only widely shared, but is also of an abstract and indefinite nature, comparable to the common concern for obedience of the law." *Becker*, 230 F.3d at 390. As such, the First Circuit ruled that the voters challenging the action by the FCC did not have standing to bring the claim. *Id.*

■ The Court finds that the plaintiffs in the instant case have failed to show an actual or imminent injury as a result of Senator Jeffords' decision to change political parties. First, with respect to their claim that Senator Jeffords has stymied the Republican national program, the Court finds that this injury is too speculative and conjectural for it to constitute an actual injury under Article III. There is absolutely no way of knowing what legislation, if any, would have been enacted had Senator Jeffords remained a member of the Republican party. This speculation becomes especially apparent considering the plaintiffs identified specific issues—such as abortion and school prayer—without citing any legislation pending at the time Senator Jeffords decided to switch parties. Thus, it is pure conjecture on the plaintiffs' part that legislation dealing with these issues or any others would have been enacted had Senator Jeffords remained a Republican.

Second, with respect to the claims that Senator Jeffords violated Vermont election law, the Court finds that the mere allegation that Senator Jeffords violated Vermont election law when he changed parties is not enough to constitute an actual injury under Article III. *Allen*, 468 U.S. at 751, 104 S.Ct. 3315. Rather, the plaintiffs must show that they have incurred some distinct and palpable injury as a consequence of Senator Jeffords' allegedly illegal decision to switch parties. The plaintiffs have not done so in this case.

Third, with respect to the allegations regarding the right to association, the Court finds that since the plaintiffs have failed to allege how their rights have been violated, it is impossible for the Court to discern any actual or imminent injury to the plaintiffs. While the violation of the plaintiffs' right to freedom of association would qualify as an actual injury, before the Court can make that finding the plaintiffs must articulate in the complaint how their constitutional right was violated. The plaintiffs, as stated above, have not done so in the instant case. As such, the Court finds that the plaintiffs have not shown an actual or imminent injury relating to this claim.

Finally, with respect to the claim that Senator Jeffords' action has diminished the confidence of the electorate, destroyed the foundation of good government, promoted party raiding, and undermined the purpose of the anti-raiding statutes, the Court finds that these injuries are, as the First Circuit ruled in *Becker*, too abstract and indefinite to constitute an actual injury for purposes of Article III. There is absolutely no way for the plaintiffs—or the court for that matter—to qualify or quantify these alleged injuries. Rather, they appear to be pure puffery on the part of the plaintiffs.

2. *Injury That Is Fairly Traceable to the Defendant's Conduct*

■ In order to have standing to initiate a lawsuit, the plaintiff must be able to show that his alleged injury is fairly traceable to the defendant's unlawful conduct. *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130. To satisfy this causation requirement, there must be a sufficiently clear causal connection between the illegal action taken

by the defendant and the injury suffered by the plaintiff. *California Assoc. of Physically Handicapped v. FCC*, 778 F.2d 823, 825–26 (D.C.Cir.1985) (finding that the plaintiff "has not met the requirement set out second—the causality requirement" because the "injury alleged by CAPH is not fairly traceable to the FCC action[.]"). The Supreme Court has specifically held that the plaintiff does not have standing if the injury "results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). In the context of Congressional action, the Supreme Court has specifically noted that "it is far from clear that this injury is 'fairly traceable' to appellants, as our precedents require, since the alleged cause of appellees' injury is not appellants' exercise of legislative power but the actions of their own colleagues in Congress in passing the Act." *Raines*, 521 U.S. at 830, 117 S.Ct. 2312.

The Court finds that in the instant case the plaintiffs have failed to demonstrate that their alleged injuries were caused by Senator Jeffords' decision to leave the Republican party. First, with respect to the plaintiffs' claim regarding the Republican national program, the Court finds that the plaintiffs have not shown that Senator Jeffords has personally prevented any legislation, let alone the entire Republican agenda, from being enacted. Initially, the Court notes that Senator Jeffords is just one out of one-hundred senators. As such, his single vote could not by itself defeat or result in the enactment of any legislation. Stated differently, there are numerous reasons—completely independent of Senator Jeffords—why certain legislation may not be-

come law or why Congress' legislative agenda may have changed since the 2000 elections.[4] Further, the actions of third parties, such as the other ninety-nine members of the senate, cannot be attributed to Senator Jeffords. *Simon*, 426 U.S. at 41–42, 96 S.Ct. 1917. Consequently, there is no way for the plaintiffs to show that the alleged setback to the Republican national program is fairly traceable to Senator Jeffords' decision to leave the party.

Second, with respect to the claim that Senator Jeffords violated Vermont election law by changing parties after the election, the Court finds that to the extent the plaintiffs have failed to identify a specific injury caused by this allegedly illegal action, there is no way for the Court to ascertain whether such an injury is fairly traceable to the actions of Senator Jeffords. As such, the plaintiffs have not sustained their burden of showing that the alleged wrongdoing by Senator Jeffords caused an injury to them.

The Court reaches the same conclusion with respect to the plaintiffs' claim that Senator Jeffords' decision to change parties violated their right to freedom of association. Since the Court cannot discern any basis upon which the plaintiffs' rights have been violated, it cannot and does not find that Senator Jeffords' actions are the cause of any injury to the plaintiffs in this regard.

Finally, with respect to the claims that Senator Jeffords has diminished the confidence of the electorate, destroyed the foundation of good government, promoted party raiding, and undermined the purpose of the anti-raiding statutes, the Court finds that even assuming arguendo that these things are true, they are not fairly traceable to the actions of Senator Jeffords. It is disingenuous for the plaintiffs to assert

4. One Such event that has clearly changed the legislative agenda is the terrorist attacks of September 11, 2001.

that by changing parties Senator Jeffords single handedly caused all of these things to happen. There are any number of incidents throughout the last thirty years—including Watergate, Iran Contra, and the Impeachment of President Clinton—that could have caused these things to occur. Moreover, in the complaint, the plaintiffs even recognize that Senator Jeffords was not the first, nor is he likely the last, Senator to switch political parties. Thus, there is no way for the plaintiffs to show that any of the harms, assuming they actually occurred, are attributable to the actions of Senator Jeffords.

### 3) *Injury Likely To Be Redressed By Court Order*

In order to satisfy the redressability prong of the standing doctrine, the plaintiff must show that it is likely, as opposed to merely speculative, that their injury will be redressed by a favorable decision by the Court. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. For example, in *Page*, the case where the plaintiff challenged the Senate's cloture rule, this Court found that the plaintiff had failed to meet this requirement. *Page*, 995 F.Supp. at 29. In particular, the Court noted that even if it declared the cloture rule unconstitutional, the Senate could still return to its former practice of allowing unlimited debate unless there existed unanimous consent to close discussion on a specific matter. *Id.* Consequently, the Court concluded that the plaintiff did not have standing to bring the lawsuit because such a result would clearly not redress his alleged injuries. *Id.*

■ The plaintiffs in the instant case have failed to show that a favorable decision by this Court will adequately redress any of their alleged injuries. First, with respect to the plaintiffs' claim regarding the Republican national program, the Court finds that it is pure speculation that

certain legislation will be enacted if Senator Jeffords returns to the Republican party. As noted above, there are numerous factors, independent of Senator Jeffords, that can affect whether a particular piece of legislation is enacted. Thus, even if the Republican party regained working control of the Senate, the Court finds that it is unlikely that the plaintiffs' alleged injuries would be redressed. That is, the plaintiffs have failed to show a sufficient causal connection between their alleged injuries and the judicial relief requested in this regard.

Second, with respect to the claim the Senator Jeffords violated Vermont election law, the Court finds that to the extent the plaintiffs have not demonstrated any injury to them by this alleged violation of the law, there is no basis upon which this Court could conclude that it can redress those injuries. Accordingly, the Court finds that the plaintiffs have not sustained their burden with respect to this claim.

The Court reaches the same conclusion concerning the plaintiffs' allegations that Senator Jeffords violated their constitutional right to freedom of association. The plaintiffs have not shown how this alleged violation took place as a result of Senator Jeffords changing political parties. Consequently, the Court finds that the plaintiffs have failed to demonstrate that it can redress any such injury stemming from this alleged constitutional violation.

Finally, with respect to the plaintiffs' claims that Senator Jeffords has diminished the confidence of the electorate, destroyed the foundation of good government, promoted party raiding, and undermined the purpose of the anti-raiding statutes, the Court finds that even if these allegations are true, the plaintiffs have not shown how an order from this Court will redress or even alleviate those harms. For instance, even assuming that Senator Jeffords did diminish the confidence of the electorate by changing

parties, there is no indication that a Court order requiring him to switch back to the Republican party will restore or raise the confidence of the electorate. The plaintiffs have completely failed to show how this Court possesses the power to redress these alleged injuries. As such, they have not sustained their burden in this regard.[5]

**B.** *Other Issues Raised in Senator Jeffords' Motion to Dismiss*

The Court will not address the other issues raised in Senator Jeffords' Motion to Dismiss because it has found that the plaintiffs do not have standing to bring the instant action.

**C.** *The Plaintiffs' Motion For Summary Judgment*

Similarly, the Court will not address the issues raised in the plaintiffs' Motion for Summary Judgment because they do not have standing to initiate this suit in the first instance. Thus, the plaintiffs are clearly not entitled to judgment as a matter of law.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the plaintiffs do not have standing to bring the instant action against Senator Jeffords. In fact, the Court finds that the plaintiffs have failed to satisfy any of the requirements the Supreme Court has articulated as being necessary to have standing under Article III. As a result, the Court must dismiss the plaintiffs' amended complaint. A separate order shall issue this date.

---

5. In their opposition to Senator Jeffords' motion to dismiss, the plaintiffs claim that they have standing to bring the instant action under the unique circumstances doctrine. Specifically, they assert that "[u]nder the 'unique circumstances' doctrine where fundamental rights would otherwise be denied, and possession of the constitutional right would have no adequate remedy and it would be difficult for a person to effectively bring suit, standing to bring suit exists." The Court finds, however, that there are two reasons why this argument must be rejected. First, the unique circumstances doctrine does not appear to be applicable to the instant case. The D.C. Circuit has recognized that "[u]nder the unique circumstances doctrine, appellate courts will excuse an untimely notice of appeal where the appellant could have filed a timely notice but was mislead to delay filing by a court order or ruling which purportedly extended or tolled the appeal deadline." *PMD Produce Brokerage Corp. v. Dep't of Agriculture,* 234 F.3d 48, 53 (D.C.Cir.2000). That clearly is not the procedural posture of this case. Second, even assuming that the plaintiffs' statement of law is correct, the Court finds that the plaintiffs' have failed to make even a preliminary showing that their constitutional rights have been violated.