**JUDICIAL WATCH, INC., Plaintiff,**

**v.**

**UNITED STATES SENATE; Emily Reynolds, in her official capacity as Secretary of the United States Senate; William H. Pickle, in his official capacity as Sergeant at Arms of the United States Senate;**

No. CIV.A.1–03–01066(CKK).

United States District Court, District of Columbia.

Oct. 6, 2004.

Larry Klayman, Paul J. Orfanedes, James F. Peterson, Judicial Watch, Inc., Washington, DC, for Plaintiff.

Peter Blumberg, United States Attorney's Office, Civil Division, Grant Raymond Vinik, Morgan John Frankel, Patricia M. Bryan, Thomas Edward Caballero, Office of Senate Legal Counsel, United States Senate, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

On May 14, 2003, Judicial Watch, Inc. ("Plaintiff"), a non-profit educational foundation, filed the above-captioned action against the United States Senate, the Secretary of the United States Senate, and the Sergeant at Arms of the United States Senate (collectively, "Defendants"). Through its complaint, Plaintiff seeks to challenge the constitutionality of the Senate filibuster as it applies to judicial nominees. More precisely, Plaintiff contends that the Senate Rules effectively impose a supermajority voting requirement for judicial nominees—a requirement that is repugnant to the scheme provided under the Constitution and its Advice and Consent Clause. To correct this purportedly unconstitutional exercise of the legislative power, Plaintiff seeks a two-fold remedy: (1) "declaring that Senate Rules XXII and V are unconstitutional as applied to judicial nominees," and (2) "enjoining [the United States Senate] from continuing to prevent votes" on two of President George W. Bush's judicial nominees. Compl. at 9 (request for relief).

Defendants countered by filing a Rule 12(b) motion advancing a tripartite defense on the pleadings: "(a) plaintiff lacks standing under Article III of the Constitution, (b) the Speech or Debate Clause of the Constitution bars this lawsuit, and (c) plaintiff's claims present a nonjusticiable political question." Defs.' Mot. To Dismiss at 1. That motion is now fully briefed by both parties.[1]

After reviewing Defendants' Motion to Dismiss, Plaintiff's Opposition, Defendants' Reply, and the relevant law, the Court shall grant Defendants' Motion to Dismiss.[2]

## I. BACKGROUND [3]

Plaintiff Judicial Watch, Inc. is a non-profit, tax-exempt educational organization organized to "increase public understanding of the operations of government and to restore ethics and morality to our nation's public life." Compl. ¶ 5. In order to advance these interests, "Judicial Watch, Inc. utilizes the civil litigation process to obtain and disseminate information to the public . . . ." Id. Plaintiff also views the civil litigation process as a fundamental component of its rights under the First Amendment. Compl. ¶ 6.

Since its inception in 1994, Plaintiff has filed more than one hundred lawsuits in state and federal courts. Compl. ¶ 7. At the time that it filed its complaint, Plaintiff was involved in approximately forty-five lawsuits pending in federal courts in the District of Columbia, "including at least eight matters pending before the U.S. Court of Appeals for the District of Columbia Circuit." Compl. ¶ 8. In addition, at the time that it filed its complaint, Plaintiff had two cases pending before federal courts in Texas. Compl. ¶ 10.

Plaintiff alleges that "[t]he federal courts of the United States currently are experiencing a significant number of vacancies in federal judgeships." Compl. ¶ 11. As of around November 7, 2002, "nine percent (9%) of all federal judgeships were vacant," including "seventeen percent (17%) of federal appellate court judgeships." Id. On May 9, 2003, President George W. Bush declared that "vacancies on the bench and overcrowded court dockets are causing delays for citizens seeking justice." Compl. ¶ 14

As a result of these vacancies, Judicial Watch contends that it "has experienced substantial delays in the disposition of matters pending before the federal courts, and before the D.C. Circuit in particular." Compl. ¶ 15. In an effort to bolster this assertion, Plaintiff cites to two cases before the D.C. Circuit that took seven to eight months beyond the national median to resolve, and four other D.C. Circuit cases that have exceeded, or are likely to exceed, that national median. Id. Under

---

1. Upon filing its Opposition to Defendants' Motion to Dismiss, Plaintiff contemporaneously filed a motion for summary judgment. That motion was held in abeyance, however, pending the adjudication of Defendants' Motion to Dismiss. Judicial Watch, Inc. v. United States Senate, et al., No. 03–1066, slip op. at 1–2 (D.D.C. Nov. 17, 2003) (order holding in abeyance plaintiff's motion for summary judgment). As a consequence of this order, the parties have not fully briefed Plaintiff's Motion for Summary Judgment.

2. Plaintiff also filed a Motion to Supplement Brief in order to provide a Table of Contents and Table of Authorities for its Opposition and Cross–Motion for Summary Judgment. The Court sees no reason to exclude this helpful information and shall grant the motion to supplement.

3. For purposes of the instant motion to dismiss, the allegations of the Complaint are taken as true. The facts in this section are presented accordingly and do not constitute factual findings by this Court.

the most favorable construction of these allegations, Plaintiff's appeals having taken up to two years to complete, from filing to disposition. *See id.*

Plaintiff attributes these delays to the significant number of vacancies on the D.C. Circuit. At the time that Plaintiff filed its complaint, only eight of the twelve active judgeships were filled on the D.C. Circuit. Compl. ¶ 16. Moreover, Plaintiff notes that two of the seventeen allotted judgeships for the Fifth Circuit were vacant at the time that it filed its complaint. *Id.*

Plaintiff contends that these vacancies fall squarely on the shoulders of "a minority of U.S. Senators attempting to block President Bush's judicial nominees." Compl. ¶ 17. Specifically, a minority of the Senate has successfully blocked the confirmation of former Assistant Solicitor General Miguel Estrada to the United States Court of Appeals for the District of Columbia Circuit and Texas Supreme Court Justice Priscilla R. Owen to the United States Court of Appeals for the Fifth Circuit.[4] Compl. ¶¶ 18–22.

Under its reading of Article I, Section 2 of the Constitution, Plaintiff argues that only fifty-one votes, a simple majority, are required to confirm a judicial nominee. Compl. ¶ 23. Plaintiff also contends that, "[b]ased on published reports, at least a simple majority of fifty-one (51) senators intend to vote in favor of the Estrada and Owen nominations." Compl. ¶ 24. However, Plaintiff alleges that Senate Rules V and XXII have unconstitutionally enabled a minority of senators to frustrate the will of the majority, and prevent the confirmation of these nominees. Compl. ¶ 25–30. The collective effect of these rules is two-fold: based on Senate Rule XXII, sixty votes are needed to confirm most judicial nominees, Compl. ¶ 26–27, and under Senate Rule V, sixty-seven votes are needed to amend the Senate Rules, including Rule XXII, Compl. ¶¶ 29–30. Given the stringent standards under Rule V, Plaintiff argues that it is "extremely unlikely" that the Senate would ever succeed in amending Senate Rule XXII. Compl. ¶ 30.

Plaintiff presents a string of interrelating propositions, ultimately concluding that "[t]he application of Senate Rule XXII and Senate Rule V to the Estrada and Owen nominations has . . . impaired, and is continuing to impair, both Judicial Watch, Inc.'s public interest mission and the exercise of its First Amendment Rights." Compl. ¶ 31. Plaintiff requests judgment against Defendants:

(1) declaring that Senate Rules XXII and V are unconstitutional as applied to judicial nominees, pursuant to 28 U.S.C. § 2201;

(2) enjoining Defendants from continuing to prevent votes on the nominations former Assistant Solicitor General Estrada and Justice Owen; and

(3) granting any and all other relief the Court deems just and proper.

Compl. at 9 (request for relief).

## II. DISCUSSION

### A. *Threshold Jurisdictional Inquiry*

■ In this case, Plaintiff asks the Court to hold unconstitutional two stand-

---

4. In order to fully apprise the Court of factual developments relating to the nominations of Estrada, Owen, and others, upon order of this Court the parties have submitted a series of notices of subsequent legislative proceedings. The Court notes the existence of these documents, but has determined that they are im- material to the resolution of the instant Motion to Dismiss. The information contained within these notices in no way resolves the number of deficiencies in Plaintiff's Complaint, even under a liberal factual construction.

**30**

ing-rules of the United States Senate and enjoin the use of these devices as they apply to two of President George W. Bush's judicial nominees. The Court, however, cannot proceed to the merits of Plaintiff's claims without first dispensing with Defendants' jurisdictional arguments. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also id.* at 94–95, 118 S.Ct. 1003 ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.' ") (quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)). "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bend them." *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). In ascertaining whether or not the Court has authority to hear the merits of Plaintiff's claims, however, "[i]t is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." *Id.* at 585, 119 S.Ct. 1563; *see also Grand Council of the Crees v. Federal Energy Regulatory Comm'n,* 198 F.3d 950, 954 (D.C.Cir.2000) (observing that "it is entirely proper to consider whether there is prudential standing while leaving the question of constitutional standing in doubt, as there is no mandated 'sequencing of jurisdictional issues' ") (quoting *Marathon Oil Co.,* 526 U.S. at 584, 119 S.Ct. 1563).

Defendants proffer three arguments (styled as jurisdictional grounds) for dismissing Plaintiff's complaint: "(1) plaintiff lacks Article III standing, (2) its claims are barred by legislative immunity, and (3) its complaint presents a non-justiciable political question." *See* Mem. of Points and Auths. in Support of Defs.' Mot. to Dismiss at 2. While these claims may appear jurisdictional, the Supreme Court has not addressed whether the Speech or Debate Clause or the Political Question Doctrine raises threshold jurisdictional questions. In fact, at least with regard to the Political Question Doctrine, there is authority suggesting that this doctrine goes to the merits. *Johnsrud v. Carter,* 620 F.2d 29, 32–33 (3d Cir.1980) (holding that dismissal based on the political question doctrine is properly entertained pursuant to Rule 12(b)(6)).[5] Thus, in order to avoid an unnecessary pronouncement settling these issues, or the inadvertent resolution of a merits-based question before dispensing with a clear-cut jurisdictional matter, the Court will begin by considering Plaintiff's

**5.** *See also Franklin v. Massachusetts,* 505 U.S. 788, 801 n. 2, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) ("While appellants asserted below that the courts have no subject-matter jurisdiction over this case because it involves a 'political question,' we recently rejected a similar argument in *Department of Commerce v. Montana,* 503 U.S. [442, 456–459, 112 S.Ct. 1415, 118 L.Ed.2d 87 (1992) ], and appellants now concede the issue."); *Powell v. McCormack,* 395 U.S. 486, 512, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (stating that "there is a significant difference between determining whether a federal court has 'jurisdiction of the subject matter' and determining whether a cause over which a court has subject matter jurisdiction is 'justiciable' "); *Baker v. Carr,* 369 U.S. 186, 198–99, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (same); 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 n. 8 (2d ed.1990); *but see Hwang Geum Joo v. Japan,* 172 F.Supp.2d 52, 54 & n. 1 (D.D.C.2001) (dismissing plaintiffs' World–War II era claims as nonjusticiable under the political question doctrine pursuant to Rule 12(b)(1)), *aff'd on other grounds,* 332 F.3d 679 (D.C.Cir.2003), *vacated and remanded by* —— U.S. ——, 124 S.Ct. 2835, 159 L.Ed.2d 265 (2004); *Burger–Fischer v. DeGussa AG,* 65 F.Supp.2d 248, 284 (D.N.J.1999) (same).

standing under Article III. And because the Court has determined that Plaintiff lacks standing, it will reserve judgment on Defendants' arguments under the Speech or Debate Clause and the Political Question Doctrine.

### B. *Standing*

■ Standing is derived from Article III of the Constitution, which limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (stating that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). The Supreme Court has held that the "irreducible constitutional minimum of standing contains three elements." *Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130. In *Steel Co.*, these elements were carefully illuminated:

> First and foremost, there must be alleged (and ultimately proven) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101–102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. *Id.*, at 45–46, 96 S.Ct. 1917; *see also Warth v. Seldin*, 422 U.S. 490, 505, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

*Steel Co.*, 523 U.S. at 103, 118 S.Ct. 1003. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Id.*

■ While the contours of Article III standing remain constant throughout the litigation, the burden of proof changes as the case proceeds along the path to trial. Thus, Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden or proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Nat'l Wildlife Fed'n*, 497 U.S. at 889, 110 S.Ct. 3177).

■ Defendants have called into question each prong of the irreducible triad—injury in fact, causation, and redressability. Mem. of Points & Auths. in Support of Defs.' Mot. to Dismiss at 2, 22–33. The Court will consider each of these arguments in turn, giving Plaintiff the benefit of all factual inferences. *See Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130. At the same time, when considering a motion to dismiss, the Court is not bound to accept the legal conclusions of the non-moving party. *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C.Cir.1997).

#### 1. Injury in Fact

■ In order to state an injury in fact, Plaintiff's Complaint must assert the "invasion of a legally protected interest which is (a) concrete and particularized

and (b) actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130 (internal quotations and citations removed). Plaintiff argues that it has suffered an injury in fact, "namely, harm to the proper functioning of the judiciary caused by unfilled vacancies in the U.S. Courts of Appeal." Pl.'s Opp'n at 8–9. This harm allegedly injures Judicial Watch's interest in "the efficient and proper function of the federal court system." *Id.*

Ignoring the causation issues that will be addressed below, Plaintiff's injury must arise from a recognized deprivation of justice in the civil cases that it litigates in federal court—that is, Plaintiff must have a legally recognized right to "the proper functioning of the judiciary" and demonstrate a deprivation of that right. Recognizing this two-fold requirement, Plaintiff alleges delayed justice in several cases pending before the D.C. Circuit, and it proffers three sources of authority, conferring a legally protected right: (a) 28 U.S.C. § 44, which fixes the number of judges that may serve on the circuit courts; (b) the First Amendment to the Constitution; and (c) a general right to the proper administration of civil justice, which appears to draw sustenance from the Due Process Clause of the Fifth Amendment. *Id.* at 12–13. For purposes of the instant motion to dismiss, the Court accepts Plaintiff's allegations of justice delayed. Nonetheless, Plaintiff has failed to demonstrate that it has a legally cognizable right to the proper functioning of the judiciary, absent conduct that rises to the complete denial of access to the Courts. As a consequence, Plaintiff's claims fail the first requirement of the standing triad.

### (a) 28 U.S.C. § 44

Plaintiff's statutory interest in the proper functioning of the judiciary is patently without merit. Contrary to Plaintiff's contention, in enacting 28 U.S.C. § 44, Congress has not mandated that the D.C. Circuit *"shall"* have 12 judges and the Fifth Circuit *"shall"* have 17 judges to maintain the timely and efficient administration of justice on these circuits. *Id.* at 13. The statute provides, in pertinent part, that "[t]he President shall appoint, by and with the advice and consent of the Senate, circuit judges for the several circuits as follows: District of Columbia, 12 [judges]; ... Fifth, 17 [judges] ...." 28 U.S.C. § 44(a). Plaintiff's reading assumes a non-existent statutory right, denigrates the Senate's role in the appointments process, and permits virtually any party with business before the courts to challenge an unfilled vacancy within the judiciary.

Plaintiff does not provide any authority establishing a statutory right under 28 U.S.C. § 44, *see* Pl.'s Opp'n at 12–13, and the Court's own efforts to find such authority have proved futile. Instead, Plaintiff relies on the mandatory term "shall" as conferring a right to the maximum number of judges allocated by the statute. *See id.* Although this argument may seem persuasive, the term "shall" must be read against the backdrop of history and consistent with the Advice and Consent Clause. The provision provides that "[t]he President shall appoint, by and with the advice and consent of the Senate, [the listed number of] circuit judges ...." 28 U.S.C. § 44. Read literally, this statute would require a construction that has not been followed by the President or the Senate; it would obligate the President to appoint candidates to fill the number of judgeships allocated within the statute, regardless of whether or not those judgeships were already filled. The political branches have, instead, clearly read this provision as providing a statutorily imposed maximum number of judges that *may* serve on any given circuit. Moreover, under any construction of the

term "shall," the Senate cannot be required to accept the President's nominees without frustrating the Constitution's Advice and Consent Clause. U.S. CONST. art. II, § 2, cl. 2. Simply stated, no rational construction of 28 U.S.C. § 44 provides Plaintiff with the right it seeks.

■ Moreover, Plaintiff's argument would permit any party with business pending before the federal judiciary to challenge an unfilled vacancy, and the provision would be equally enforceable against the President as it would be against the Senate. How long would the President be permitted to wait before selecting a nominee without triggering a right under the statute? Likewise, could the Senate deliberate on a candidate's qualifications without implicating Plaintiff's rights under the statute? The number of sitting judges on the federal courts is a matter committed to the sound discretion of the political branches, not the courts. Accordingly, the Court holds that 28 U.S.C. § 44 does not provide Plaintiff with a legally protected interest.

### (b) The First Amendment

Plaintiff nonetheless claims that it has a legally protected interest in judicial vacancies based on the First Amendment. Pl.'s Opp'n at 12–13. Plaintiff notes that the Supreme Court has recognized litigation as a form of political expression, *id.* at 12 (citing *NAACP v. Button,* 371 U.S. 415, 429, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)), and as a right protected under the First Amendment, *id.* (citing *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002); *Laker Air-*

*ways Ltd. v. Pan Am. World Airways, Inc.,* 604 F.Supp. 280, 288 n. 32 (D.D.C. 1984)). The Court certainly does not dispute this characterization of the law, but Plaintiff does not claim that its right of access has been denied; it claims that judicial vacancies have led to the improper functioning of the judiciary. *See id.* And once again, Plaintiff has not cited to any authority establishing a First Amendment right to the proper functioning of the judiciary. *See id.* at 12–13. If this right can be framed at all, it would undoubtedly stem from the Fifth Amendment Due Process Clause, not the First Amendment. Accordingly, the Court holds that Plaintiff has failed to establish a legally protected interest under the First Amendment.[6]

### (c) The Fifth Amendment Due Process Clause

Finally, Plaintiff argues that it has a general right to the efficient administration of justice, a right that is derived in part from the Due Process Clause of the Fifth Amendment. *Id.* at 13. Plaintiff cites three cases in support of this proposition: *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.,* 725 F.2d 537 (9th Cir.1984) (*en banc*); *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); and *Los Angeles County Bar Ass'n v. Eu,* 979 F.2d 697, 707 (9th Cir.1992). The Court finds the first two cases inapposite to the question before it, and while the remaining case warrants careful consideration, it clearly rejects any claimed right to the efficient administration of justice in civil cases.

---

**6.** Plaintiff does not contend that it has been deprived access to the federal judiciary, and even under the liberal reading this Court must give its complaint, Plaintiff has not pleaded facts sufficient to establish that the delayed justice it has experienced rises to the level of a denial of access. *See Los Angeles County Bar Ass'n v. Eu,* 979 F.2d 697, 699–700, 707 (9th Cir.1992) (holding the delays of more than six years did not amount to the denial of access to the courts).

In *Instromedix*, an en banc panel of the Ninth Circuit considered whether Article III of the Constitution barred a consensual trial before a non-Article III judge, a federal magistrate. *Instromedix*, 725 F.2d at 540. The underlying dispute involved a patent infringement claim, which both parties elected to try before a magistrate judge pursuant to 28 U.S.C. § 636(c) (Supp. V 1981) and the district court's local rules. *Id.* On appeal, a three-judge panel of the Ninth Circuit, *sua sponte*, raised the question of the constitutionality of trial before a non-Article III judge. *Id.* The panel concluded that the Federal Magistrate Act of 1979 violated guarantees under Article III and invalidated it. *Id.* On reconsideration en banc, the Ninth Circuit upheld the validity of the Federal Magistrate Act, principally because it did not apply without the voluntary consent of the parties. *Id.See also id.* at 542–43.

Plaintiff seizes upon one line in this opinion to substantiate its claim that it has a legally protected interest in the efficient administration of civil justice: "The federal litigant has a personal right, subject to exceptions in certain classes of cases, to demand Article III adjudication of a civil suit." Pl.'s Opp'n at 13 (quoting *Instromedix*, 725 F.2d at 541). When this sentence is considered in context, however, it does not establish a legally protected right to the efficient administration of justice; rather, it merely establishes that under cases like *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), there are limits to Congress's authority to divest judicial functions to non-Article III tribunals. *Instromedix*, 725 F.2d at 541–42. Simply put, *Instromedix* does not support a right to the efficient administration of justice in civil cases.

Likewise, nothing in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), fashions the right Plaintiff must establish. In fact, Plaintiff does not even cite to a binding portion of the *Arnett* Court's decision, let alone a relevant portion. *See* Pl.'s Opp'n at 13. Instead, Plaintiff cites to Justice Powell's concurring opinion—to a portion where the late Justice opines: "While the legislature may elect not to confer a property interest in federal employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Arnett*, 416 U.S. at 167, 94 S.Ct. 1633 (Powell, J., concurring). It is difficult to determine what bearing this proposition has on the instant matter. The entire issue in contention here is whether Plaintiff has established a right, not whether Congress may deprive Plaintiff of a right once conferred.

Finally, the Court arrives at *Los Angeles County Bar Association v. Eu*, 979 F.2d 697 (9th Cir.1992), the remaining authority Plaintiff has relied upon to establish its right to the effective administration of justice. This case gives the Court pause: Although it held that there is "no basis in the Constitution for a rigid right to resolution of all civil claims within [a specific] time frame," *Los Angeles Bar Ass'n*, 979 F.2d at 706, the court first concluded that the plaintiff established standing based on its interest in collateral litigation pending before the allegedly stagnant court system it was challenging, *id.* at 700–01. After carefully considering this case, however, the Court concludes that it does not provide Plaintiff with a legally protected interest to stand upon.

In *Los Angeles County Bar Association v. Eu*, the Ninth Circuit considered the constitutionality of a California statute, which set the number of judges on the Superior Court for Los Angeles. *Los Angeles Bar Ass'n*, 979 F.2d at 699. The plaintiff, a local bar association, contended

that a shortage of state court judges caused inordinate delays in civil litigation, depriving it of its right to access the courts in Los Angeles county. *Id.* at 699–700. The record indicated that for civil jury trials held in June 1988, the summer after the complaint was filed, "the median time from filing to trial was fifty-nine months." *Id.* at 700. And the following year, in 1989, "only 50% of all civil cases in Los Angeles were resolved in less than two years, 90% were resolved in 4.2 years, and 98% in 6.3 years." *Id.* The parties filed cross-motions for summary judgment, which the district court resolved in favor of the defendants. *Id.*

On appeal, the Ninth Circuit began by raising the issue of standing *sua sponte.* *Id.* It noted that the plaintiff bar association alleged that it was litigating a case in the Los Angeles County courts. *Id.* at 700–01. It concluded, based on a paragraph of analysis, that the bar association's status as a litigant conferred upon it a harm and that this harm established standing. *Id.* at 701. The court then proceeded to address a series of justiciability arguments tendered by the defendants before considering the underlying merits of the plaintiff's claim—that it had been denied its fundamental right of access to the courts. *Id.* at 701–05.

Upon considering the merits of the bar association's right of access claim, the Ninth Circuit listed a litany of cases establishing a litigant's "right to pass through the courthouse doors and present [a] claim for judicial determination." *Id.* at 706. However, the court recognized that the right at interest was not one of access, but the right to the judicial determination of a civil claim within a prescribed time period. *See id.* ("Notwithstanding the fundamental rights of access to the courts, the Bar Association does not cite, nor has our independent research revealed, any decision recognizing a right to judicial determination of a civil claim within a prescribed period of time as an element of such right."). Upon considering this question, the Ninth Circuit held, "we can find no basis in the Constitution for a rigid right to resolution of all civil claims within [a specific] time frame." *Id.* In addition, based on the record before it, the court held that the delays cited by the plaintiff did not amount to a deprivation of access to the courts. *Id.* at 707. To summarize, then, the *Los Angeles Bar Association* court expressly held that there was no right to the judicial determination of a civil claim within a prescribed time frame, and delays of more than six years did not effectively amount to the deprivation of the recognized right of access.

Judicial Watch nonetheless seizes upon dictum from this opinion to support a right clearly rejected by the court. Pl.'s Opp'n at 13. Without acknowledging the holding in *Los Angeles County Bar Association,* Plaintiff notes that the court wrote: "we do not discount the possibility that litigation delays in certain circumstances could effectively deprive individual litigants of the ability to vindicate fundamental rights." *Los Angeles Bar Ass'n,* 979 F.2d at 707. But the court continued, "On this record, however, we discern no constitutional violation." *Id.*

In *Los Angeles County Bar Association,* the Ninth Circuit clearly rejected the right now claimed by Plaintiff. Although the court found standing, its holding rested on the assertion of a different right, the right to access, and a record establishing delays of more than six years. Here, Plaintiff does not contend that it has been denied access to the courts, and even a liberal construction of Plaintiff's Complaint fails to adduce delays that rise to the level faced by the court in *Los Angeles County Bar Association.* More importantly, that

court could "find no basis in the Constitution for a rigid right to resolution of all civil claims within [a specific] time frame." *Los Angeles Bar Ass'n,* 979 F.2d at 706. Accordingly, Plaintiff has failed to establish a legally protected interest and therefore does not possess standing to maintain this action.[7]

### 2. Causation

■ Even assuming, *arguendo,* that Plaintiff has alleged the deprivation of a legally protected right, it also must establish that the injury it has sustained is "fairly traceable to the challenged action of the defendant," *Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130 (alterations in the original omitted), and "not injury that results from the independent action of some third party not before the court," *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Plaintiff's claims of injury are simply too attenuated to be considered fairly traceable to the purportedly unconstitutional invocation of the cloture rule. Accordingly, Plaintiff lacks standing under the second prong of the standing triad.

In order to satisfy the standing doctrine's causation requirement, Plaintiff must demonstrate that the harm it has purportedly sustained, delayed justice, is fairly traceable to the challenged actions of Defendants, and not the result of some independent third party action or effect. Instead of connecting allegedly unlawful conduct to harm, Plaintiff stops midcourse, arguing that but-for Senate Rules XXII and V, nominees Owen and Estrada would be confirmed to the federal judiciary. *See*

Pl.'s Opp'n at 17. These arguments do not connect the alleged harm, delayed justice, to the conduct of Defendants; they connect the failed nominations of Owen and Estrada to the purportedly unconstitutional use of the cloture rule. Plaintiff must go one step further; it must connect two vacancies on the judiciary to delayed justice—this Plaintiff cannot do.

The connection between judicial vacancies and Plaintiff's claims of delay are simply too attenuated to satisfy causation under the standing doctrine. As Defendants note in their memorandum in support of their motion to dismiss, "numerous other factors influence the length of time from the filing of a notice of appeal to the court's resolution of that specific appeal, including: the number of legal claims for which relief is sought, the number of parties involved, the complexity of the legal issues, the length of the district court record to be reviewed, any extensions in the briefing schedule, whether a party files any motions, the existence of applicable circuit precedent, and the agreement or disagreement about the merits of the appeal within the appellate panel." Mem. of Points & Auths. in Support of Defs.' Mot. to Dismiss at 29. Admittedly, judicial vacancies contribute to the time frame for disposing of appeals, but given the myriad of other factors influencing appellate adjudication, Plaintiff cannot claim that a delay in justice is fairly traceable to the judicial vacancies it invokes in its complaint.

Moreover, the Court is skeptical of Plaintiff's underlying assumption—that but-for Senate Rules XXII and V the Senate would confirm the contested nominees. There are a number of legislative stall-

---

7. *See also Raiser v. Daschle,* 54 Fed.Appx. 305, 307, 2002 WL 31862705 (10th Cir.2002) ("The pendency of other litigation initiated by Raiser is insufficient to give him standing to challenge the Senate's referral of judicial nominations to the Judiciary Committee. Further, his claims of alleged delay because of vacancies in the courts do not establish an injury."), *cert. denied,* 539 U.S. 903, 123 S.Ct. 2251, 156 L.Ed.2d 112 (2003).

tactics that a committed group of senators could invoke to block a potential nomination from coming to the floor for a vote, including: quorum calls, motions to adjourn, motions to recess, and roll call votes. WALTER J. OLESZEK, CONGRESSIONAL PROCEDURES AND THE POLICY PROCESS 213, 228 (5th ed.2001) [hereinafter OLESZEK]. And even if these two nominees were confirmed, the Court could only speculate as to the effect an additional judge would have on the time in which it would take the D.C. Circuit and Fifth Circuit to adjudicate Plaintiff's cases. As Judge Joyce Hens Green noted, albeit in a slightly distinguishable context, "The chain of causation between Rule XXII and any possible injury suffered by [the plaintiff] stemming from the failure of unspecified legislation to be enacted is far too remote to satisfy this second element of standing." *Page v. Shelby*, 995 F.Supp. 23, 29 (D.D.C.1998), *summarily aff'd*, 172 F.3d 920 (D.C.Cir. 1998).

### 3. Redressability

▮▮▮▮ Finally, even if the Court ignores the fatal deficiencies under the first two requirements of the standing doctrine, under the redressability prong, it "must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130. Under this standard, a plurality of the Supreme Court found standing even where a court could not compel the defendants to implement its decision. *Franklin v. Massachusetts*, 505 U.S. 788, 803, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) (O'Connor, J., writing for a four-justice plurality as to part III) (assuming that political actors would be "substantially likely" to "abide by an authoritative interpretation of the [law] by the District Court, even though they would not be directly bound by such a determination"); *see also id.* at 824 n. 1,

112 S.Ct. 2767 (Scalia, J. concurring in part and concurring in judgment) (noting that, implicitly, a majority of the Court found standing, though not necessarily on grounds stated in Justice O'Connor's plurality opinion). Accepting this construction of the law for purposes of the instant motion, even if the Court lacks the authority to implement a remedy, *e.g.*, U.S. CONST. art. I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings ....."), Plaintiff may be able to establish standing, *see Franklin*, 505 U.S. at 803, 112 S.Ct. 2767 (plurality), provided that the remedy it seeks is likely to redress its injury, *Linda R.S. v. Richard D.*, 410 U.S. 614, 617–18, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Plaintiff, however, has failed to establish that the remedy it seeks is likely to redress its injury and therefore lacks standing under the third leg of the doctrine.

Plaintiff asks this Court to declare Senate Rules XXII and V unconstitutional, and enjoin the use of these rules as they apply to two of President George W. Bush's judicial nominees. Compl. at 9 (request for relief). While this course may seem effective, a simple explanation of Senate practice demonstrates why this route would fail to redress Plaintiff's injuries.

The Senate is traditionally understood as a body of unlimited debate. *See* OLESZEK, *supra*, at 212. Thus, as a baseline, each member of the Senate is entitled to unlimited debate on the issues before the body. *See id. See also* STANDING RULE OF THE SENATE XIX. There are only two situations (pertinent to the confirmation of a judicial nominee) where the Senate will restrict debate: under a unanimous consent agreement or by invoking cloture pursuant to Rule XXII. *See* OLESZEK, *supra*, at 212. "Therefore, were Rule XXII declared unconstitutional, the Senate could

return to its former practice of allowing unlimited debate unless there existed unanimous consent to close debate." *Page,* 995 F.Supp. at 29. Because Rule XXII is properly understood as a vehicle for ending debate, simply declaring it unconstitutional would not redress Plaintiff's injury. It might actually encourage an even smaller minority of senators to grind the Senate's legislative business to a halt.

Such a remedy also raises serious separation of powers concerns not addressed by the plurality in *Franklin v. Massachusetts.* Even if the Court lacks the authority to rewrite the Senates rules, U.S. CONST. art. I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings . . . ."), a non-binding decision on the merits of Plaintiff's claims would call into question the application of every Senate or House standing-rule that interferes with or delays the enactment of legislation, the adoption of treaties, or the confirmation of executive officers. This would amount to an unprecedented exercise of the judicial power, directed at the core functions of the United States Congress.

Plaintiff cannot establish that the remedy it seeks is likely to redress its claimed injury—significant delays in civil justice before the United States Courts of Appeal. Accordingly, Plaintiff lacks standing under the third element of the irreducible triad.

### III. CONCLUSION

Plaintiff alleges delays in justice—delays that it could work to reconcile, where warranted, on a case-by-case basis. *See* D.C. CIR. R. 8 (providing procedures for obtaining a stay of a district court judgment and other emergency relief); *accord* 5TH

CIR. R. 8.4, 27.3. Instead, Plaintiff asks the Court to enmesh itself in the rules and traditions of a house of the United States Congress. The underlying concerns driving the standing doctrine—most notably, the separation of powers—warrant dismissal. As Chief Justice Burger explained:

> It can be argued that if respondent is not permitted to litigate this issue, no one can do so. In a very real sense, the absence of any particular individual or class to litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process. . . . Slow, cumbersome, and unresponsive though the traditional electoral process may be thought at times, our system provides for changing members of the political branches when dissatisfied citizens convince a sufficient number of their fellow electors that elected representatives are delinquent in performing duties committed to them.

*United States v. Richardson,* 418 U.S. 166, 179, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

Defendants' Motion to Dismiss is granted.[8] An Order accompanies this Memorandum Opinion.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 6th of October, 2004, hereby

**ORDERED** that Defendants' Motion to Dismiss [# 14] is GRANTED; and it is further

---

8. In disposing of the present motion, the Court has not passed on the validity of Defendants' arguments under the Speech or Debate Clause or the Political Question Doctrine. Moreover, because the Court has granted Defendants' Motion to Dismiss, Plaintiff's Cross-Motion for Summary Judgment—currently held in abeyance—is therefore denied as moot.

**ORDERED** that Plaintiff's Cross–Motion for Summary Judgment [# 22] is DENIED as moot; it is further

**ORDERED** that Plaintiff's Motion to Supplement Brief [# 24] is GRANTED.

**SO ORDERED.**