Opinion for the Court filed by Senior Circuit Judge WILLIAMS.
Concurring Opinion filed by Senior Circuit Judge WILLIAMS.
WILLIAMS, Senior Circuit Judge.
Senate Rule XXII provides that three fifths of all senators duly chosen and sworn can bring debate on an issue to a close. For amendments of the Senate rules themselves, however, cloture under Rule XXII requires a vote of two thirds of all senators present and voting. Rule V provides that the Senate’s rules continue from one Congress to the next unless changed as provided in the Senate rules. The three-fifths rule applies to judicial nominations.
Judicial Watch, Inc., a non-profit organization that advocates “transparency, integrity and accountability in government, politics, and the law,” filed suit in district court against the Senate, its Secretary, and its Sergeant at Arms, challenging Rules V and XXII and seeking declaratory and injunctive relief. It claims that the *360 rules in effect require supermajority support for confirmation of judicial nominees, in violation of Article II, Section 2, Clause 2, of the Constitution, which it reads as providing for confirmation by a simple majority.
On a motion under Rule 12(b), the district court dismissed Judicial Watch’s suit for want of Article III standing. Judicial Watch, Inc. v. U.S. Senate, 340 F.Supp.2d 26, 38 (D.D.C.2004). We affirm, though on somewhat different reasoning.
* * # # ❖
To show constitutional standing, Judicial Watch must meet the familiar requirements of injury-in-fact, causation, and redressability. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Judicial Watch points out that in pursuing its agenda it makes much use of the judicial process, having litigated over one hundred suits in state and federal court since its inception in 1994. It alleges that the challenged Senate rules have slowed the confirmation process and thus the filling of judicial vacancies, thereby injuring it by increasing delay in its lawsuits and adversely affecting its interest in “the efficient and proper function of the federal court system.” Judicial Watch, 340 F.Supp.2d at 32. As delay appears to be the only specific impairment of efficient function alleged, we will focus on it.
The district court found that Judicial Watch failed to show any of the three elements of Article III standing. Id. at 31-38. In rejecting Judicial Watch’s claim of injury-in-fact it relied heavily on language in Lujan describing the requisite injury as “invasion of a legally protected interest.” Id. at 31-32 (emphasis added) (quoting Lujan, 504 U.S. at 560, 112 S.Ct. 2130). The court concluded that Judicial Watch’s interest in speed of litigation either was not protected by the provisions that Judicial Watch cited (namely, 28 U.S.C. § 44 (providing for circuit judge appointments), the First Amendment, and the Due Process Clause of the Fifth Amendment), or at any rate was not protected by those provisions in such a way that the delays Judicial Watch claimed amounted to invasion of any “right” that they afforded Judicial Watch. 340 F.Supp.2d at 35. We, instead, assume arguendo that Judicial Watch has met the injury-in-fact requirement but find that its allegations fail to support an inference that the rules challenged here caused the alleged injury. See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).
Our review of the grant of the motion to dismiss for want of jurisdiction is de novo. See Information Handling Services, Inc. v. Defense Automated Printing Services, 338 F.3d 1024, 1029 (D.C.Cir. 2003). In assessing plaintiffs allegation that Rules XXII and V caused delays in plaintiffs lawsuits, we assume the correctness of all plaintiffs allegations of specific facts, such as the duration of specific appeals filed by plaintiff (which in any event are matters of public record). We do not, however, automatically accept its conclusory allegations that the challenged rules were a material cause for those durations. We assess plaintiffs specific allegations for their “logical adequacy,” Haase v. Sessions, 835 F.2d 902, 908 (D.C.Cir.1987), and for “quantum of proof,” id., i.e., whether the specific alleged facts support inferences claimed by plaintiff, including an inference of causation, United Transp. Union v. ICC, 891 F.2d 908, 913 n. 9 (D.C.Cir. 1989) (analyzing Simon).
The first question is what rule would prevail in the absence of Rule XXII. As Senate practice from 1806 until the initiation of formal cloture rules in 1917 was *361 evidently one of unlimited debate, invalidation of Rule XXII might well restore that practice, causing (on Judicial Watch’s theory) yet more delay. This of course edges over into problems of redressability. But Judicial Watch’s complaint asked for an injunction to stop defendants from “continuing to prevent votes” on the nominations of Miguel Estrada and Priscilla Owen (a request mooted by Miguel Estrada’s withdrawal and Judge Owen’s confirmation), Complaint at 9, Joint Appendix (“J.A.”) 17; given that request, it seems fair to read the next request in the complaint, asking for “any and all other relief the Court deems just and proper,” id., as encompassing a request for judicial substitution of a simple majority rule for cloture on judicial nominations. But while Judicial Watch may have asked for such a judicial rewrite, our providing one would obviously raise the most acute problems, given the Senate’s independence in determining the rules of its proceedings and the novelty of judicial interference with such rules. See Page v. Shelby, 995 F.Supp. 23, 29 (D.D.C.1998), aff'd, 172 F.3d 920 (D.C.Cir.1998) (table). Rather than embark on those issues, we will assume arguendo that a court could somehow overcome them. But even with the heroic assumption that Judicial Watch might secure an order requiring a simple majority for cloture, we find that its causation allegations fail to show two links needed to support an inference that the three-fifths cloture rule caused slower case processing than would have prevailed under a majority cloture rule.
First, we note that Judicial Watch offers no systematic evidence of confirmation delay due to Rule XXII. Granted, it faces considerable difficulty marshalling evidence, as the only changes in rules from 1917 to the present have been first to make non-unanimous cloture possible, then to reduce the requisite cloture majority (from two-thirds to three-fifths) and to change the applicable baseline (from senators present and voting to all senators). In any event, even if recent times have manifested an increase in confirmation times (a proposition that in fact is highly sensitive to the definition of the time period in which nominations may have been susceptible to the filibuster and to the classification of nominees ultimately not confirmed), plaintiff has alleged no facts supporting an inference of a material role for Rules V and XXII. Given the great variation in confirmation times in the nearly 200 years during which at least as a formal matter the Senate might be argued to have applied a supermajority cloture rule, it is not enough, in trying to support an inference that Rule XXII has played a material role, to rely simply on intuition.
Second, even if Rule XXII has materially slowed the confirmation process, plaintiffs allegations do almost nothing to show that such a slowing has materially increased case disposition time. One relevant variable that may be a main driver of disposition times, and relatively unresponsive to small changes in overall judgepower, is pre-argument processing (including procedural and dispositive motions). In fact, in the D.C. Circuit, the venue which Judicial Watch cites for evidence of delay, the median time from filing a notice of appeal to filing the last brief is four months longer than the systemwide median, while the median time from notice of appeal to final disposition is only 0.1 months (merely three days) longer than the median time for all circuits. See Administrative Office of the U.S. Courts, U.S. Courts of Appeals Statistical Tables (Mar. 2003), available at http:/ /jnet.ao.dcn/img/assets/4.647/appeal303.pdf (Table B4). Moreover, judges may respond to judicial vacancies by working harder.
*362 To show a link between delays in confirmations and in case dispositions, Judicial Watch again offers at best anecdotal data. It points in particular to two of its appeals filed in and decided by this court during the filibuster of Miguel Estrada in 2002, Oral Arg. Tape at 1:58; Complaint at 5, J.A. 13 (citing Browning v. Clinton, 292 F.3d 235 (D.C.Cir.2002); Meng v. Schwartz, 48 Fed.Appx. 1 (D.C.Cir.2002)), which took roughly 16-17 months from filing to disposition,[1] and four cases unresolved when the complaint was filed and lasting roughly 18, 8, 6, and 5 months up to that moment.[2] By way of supposed contrast, Judicial Watch’s complaint asserts that the median filing-to-disposition time for all federal appeals in 2002 was 10.7 months.
The evidence proves little. First, Judicial Watch never in fact identifies what it regards as the filibuster era. Our best guess is that it sees that era at least as encompassing 2002' — the cases that Judicial Watch cites for evidence of delay were initiated in February and August of 2001, and the filibuster of its prime example, nominee Miguel Estrada, was ongoing in that year. But with no assertion of a specific time period, Judicial Watch has posed an effectively non-falsifiable claim. Second, Judicial Watch makes no effort to compare the systemwide case disposition time of 10.7 months in 2002 with disposition times in what it regards as filibuster-free eras. Third, focusing solely on its own D.C. Circuit cases, Judicial Watch makes no effort to show a pattern over time; and it disregards cases that it filed in the same era that were speedily resolved: Judicial Watch, Inc. v. Department of Justice, No. 01-5019, 2001 WL 800022 (D.C.Cir.2001) (4.5 months), and Hall v. Larsen, 46 Fed.Appx. 634 (D.C.Cir. 2002) (8 months). See J.A. 31-32 (listing law suits filed by Judicial Watch).
Again, serious comparison would pose great difficulties. Judicial Watch and the Senate do not even agree, for example, on the calculation of vacancies. Compare Appellees’ Br. at 36-37 n.26, with Appellant’s Reply Br. at 7 n.2. Ideally one would consider vacancies and nomination delays by circuits and court terms, and try to ascertain what if any relation may exist between these and case delay, accounting for other relevant differences. Judicial Watch has instead offered only a handful of cases selected to overrepresent case delay; these don’t begin to cut it.
In short, Judicial Watch has failed to substantiate either essential link — between Rule XXII and delayed vacancy filling, and between delayed vacancy filling and delayed adjudication. See Allen, 468 U.S. at 759, 104 S.Ct. 3315.
Because we agree with the district court that Judicial Watch failed to establish the causation element of Article III standing, the judgment of the district court is

Affirmed.

. In the Meng case the 16-17 months estimate is a bit of a stretch, as the panel opinion issued about 13 and 1/2 months after filing; final rejection of an en banc petition required 2 and 1/2 additional months.

. These in due course concluded, taking roughly 20, 18, 8, and 12 months. See Chung v. U.S. Dep’t of Justice, 333 F.3d 273 (D.C.Cir. 2003) (20 months until panel decision and 23.5 months until denial of rehearing and rehearing en banc); United We Stand America, Inc. v. I.R.S., 359 F.3d 595 (D.C.Cir.2004) (18 months); In re Cheney, 334 F.3d 1096 (D.C.Cir.2003) (8 months), vacated, Cheney v. U.S. Dist. Court, 542 U.S. 367, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (19.5 months since filing notice of appeal in D.C. Circuit), mandamus granted en banc, In re Cheney, 406 F.3d 723 (D.C.Cir.2005) (30 months since filing original notice of appeal in D.C. Circuit); Stewart v. Evans, 351 F.3d 1239 (D.C.Cir. 2003) (12 months).