**Leatrice TANNER-BROWN, on Behalf of Herself and All Other Persons Similarly Situated and Harvest Institute Freedman Federation, LLC, Appellants**

v.

**Ryan ZINKE, Secretary of Interior, and John Tahsuda III, Acting Assistant Secretary, Indian Affairs, Appellees**

No. 16-5040
September Term, 2017

United States Court of Appeals,
District of Columbia Circuit.

Filed on: December 12, 2017

Paul Anthony Robinson, Jr., Esquire, Law Office of Paul A. Robinson Jr., Memphis, TN, Percy Squire, Percy Squire, Co., LLC, Columbus, OH, Thomas Demetrios Lambros, Attorney, Law Office of Thomas Lambros, Ashtabula, OH, for Plaintiffs-Appellants

John Emad Arbab, Mary Gabrielle Sprague, Esquire, Attorney, U.S. Department of Justice, (DOJ) Environment and Natural Resources Division, Washington, DC, DOJ Appellate Counsel, U.S. Department of Justice, (DOJ) Civil Division, Appellate Staff, Washington, DC, for Defendants-Appellees

Before: Garland, Chief Judge, Pillard, Circuit Judge, and Sentelle, Senior Circuit Judge.

## JUDGMENT

Per Curiam

This appeal was considered on the record from the United States District Court for the District of Columbia and the briefs filed by the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has accorded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the judgment of the district court be **AF-FIRMED.**

### I.

Leatrice Tanner-Brown and the Harvest Institute Freedman Federation (Federation) brought this putative class action asserting that the Department of the Interior must account for oil and gas revenues that may have been due a century ago to Black Freedmen members of formerly

slaveholding Indian tribes. Tanner-Brown's claimed interest in the case arises through her grandfather, George Curls, son of former Cherokee slaves and an enrolled member of the Cherokee tribe who owned sixty acres of land in Nowata County, Oklahoma, from 1910 until 1919. The Federation appears here as an organization "formed for the specific purpose of seeking redress through the courts" that has "conducted research" and "provided financing and required legal resources, including counsel, to advocate on behalf of Freedmen." J.A. 5.

The complaint alleges that Curls was thirteen years old when he received a sixty-acre allotment "under the Curtis Act" of 1898, J.A. 4, which cleared the way for lands owned by certain tribes, including the Cherokee, to be parceled out to individual tribal members, *see Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1441-42 (D.C. Cir. 1988). A 1908 statute lifted restrictions on Freedmen buying and selling those allotments, creating conditions under which speculators swindled many of the new landowners. *See* Act of May 27, 1908, 35 Stat. 312 (1908) (the 1908 Act); *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 331, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008). The same statute took a more protective approach toward allotment-holders who were not yet adults.

Plaintiffs contend that the protections spelled out in Sections 2 and 6 of the 1908 Act gave the Department of the Interior a fiduciary duty to monitor and control any leasing activity on minor Freedmen's allotments, and specifically to keep records of any oil and gas royalties derived therefrom. They allege that the Department failed to abide by its fiduciary responsibilities to George Curls and other Freedmen minors, and so owes an accounting to Tanner-Brown and other similarly situated descendants.

The district court, holding that both Tanner-Brown and the Federation lacked standing, dismissed the suit. *See Tanner-Brown v. Jewell*, 153 F.Supp.3d 102 (D.D.C. 2016). Its order was final and appealable. *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017).

## II.

To establish standing to sue in federal court, plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). Plaintiffs bear the burden to establish standing. *Id.*

The district court correctly held that Tanner-Brown failed to allege at least the first element, injury in fact. It gave two independent reasons. First, any injury Curls might have suffered did not confer standing on Tanner-Brown, who offered no theory of how Curls's injury affected any concrete interest of hers. Second, Tanner-Brown failed to allege that Curls suffered harm from the Department's alleged accounting failures; neither the complaint nor the archival material Tanner-Brown later submitted contained any basis for concluding that oil or gas leasing (triggering the claimed accounting duty) ever occurred on his land.

On appeal, Tanner-Brown's principal contention is that the district court erred in giving little weight to a letter she received acknowledging her status as a potential claimant in a separate, long-running class action, the *Cobell* litigation. In *Cobell*, various classes of Native Americans successfully claimed entitlement to an accounting from the Department of the Inte-

rior as required by the American Indian Trust Fund Management Reform Act of 1994. *See Cobell v. Jewell*, 802 F.3d 12, 16 (D.C. Cir. 2015); *Cobell v. Norton*, 240 F.3d 1081, 1086-89 (D.C. Cir. 2001). The letter confirmed her eligibility to receive a settlement payout as a member of that case's "Trust Administration Class." Tanner-Brown contends that her receipt of that letter establishes her entitlement to seek analogous relief in this litigation as well.

The district court correctly held the letter does not establish that Tanner-Brown had suffered any injury supporting standing for the purposes of this suit. The letter does not say why Tanner-Brown was deemed eligible to participate in the Trust Administration Class, makes no connection between that eligibility and Curls's land, and elsewhere says Tanner-Brown had not proven herself to be "an heir to a[n] ... individual who owned restricted or trust lands." J.A. 199. And Tanner-Brown has provided no other information that might contextualize the letter or show it to be relevant. We thus agree with the district court that Tanner-Brown failed to allege "how the injury [she] purportedly suffered in connection with the claims in *Cobell*" serves to establish an "injury suffered in connection with [her] claim in this case." *Tanner-Brown*, 153 F.Supp.3d at 110-11.

Tanner-Brown cites, as additional relevant authority, a district court's recent conclusion that descendants of Cherokee Freedmen have tribal citizenship rights equal to those of native Cherokees. *See Cherokee Nation v. Nash*, 267 F.Supp.3d 87 (D.D.C. 2017). Accepting as much, and crediting for current purposes plaintiffs' allegations that George Curls was an enrolled Cherokee, this recent court decision does not appear to cure the defects in Tanner-Brown's standing. As with the *Cobell* letter, she fails to connect the *Cherokee Nation* opinion—in a different case,

presenting different facts and raising different legal issues—to a theory of standing in this case.

*Cobell, Cherokee Nation*, and other cases show that some injustices akin to those described in Tanner-Brown's complaint are real and, when legally actionable and factually proved, may be redressed in federal court. But Tanner-Brown's suit cannot go forward unless she first establishes her standing to seek the particular relief at issue under her stated legal theory. Her complaint fails to satisfy that threshold requirement.

Tanner-Brown's other arguments similarly fall short of establishing her standing. She claims that Curls was owed an accounting and hence that she, as his heir, is now entitled to it. In support, Tanner-Brown notes that Nowata County, the site of Curls's allotment, was "oil rich territory" and points to evidence of oil and gas leasing on the property of Curls's siblings, including an older brother who had land near Curls's. But information in her submissions, stating that on Curls's specific allotment there was no oil, undercuts that inference. In particular, the same contemporaneous records that report oil-and-gas-related income from the siblings' Nowata County land report "nothing of value" from George Curls's. J.A. 93. Even when read generously, the complaint and the submissions Tanner-Brown appears to want incorporated by reference do not identify any facts to support her theory that her grandfather was owed but not afforded an accounting.

For the first time on appeal, Tanner-Brown also hints that perhaps injuries to George's siblings—her great aunts and great uncles—might contribute to her standing. They do not. Among other reasons, the siblings are nowhere mentioned in the complaint.

Finally, even assuming her grandfather suffered a concrete injury, Tanner-Brown has not alleged how she was thereby injured. She rests on the bare assertion that she is his descendant. The government has consistently argued, and the district court held, that more would be needed to transform any alleged harm to Curls into a concrete and particularized injury to Tanner-Brown. Tanner-Brown never offered either court any response on this point, and our independent review reveals nothing that would supply the necessary link. Tanner-Brown does not allege that either she or anyone else in her family still owns the land in question; indeed, the documents Tanner-Brown submitted include one apparently transferring Curls's interest in his allotment to unrelated buyers in 1919. Tanner-Brown is not suing on behalf of Curls's estate, nor has she alleged that she inherited anything from it (or that she would have, absent the Department's mismanagement). And, even accepting that Tanner-Brown may have been an heir of Curls, one can only speculate that an unknown amount of money Curls did not receive as a minor in the 1910's might have increased the size of his estate—and Tanner-Brown's bequest—as of the time of his death in 1967.

Taken together, these pleading deficiencies leave Tanner-Brown without standing to sue.

### III.

For the reasons well stated by the district court, the Federation also lacks standing. *See Tanner-Brown*, 153 F.Supp.3d at 113-14. In brief, "[a]n association has standing to bring suit on behalf of its members when [1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The first element—whether any Federation member has individual standing—rises and falls with Tanner-Brown's claim of injury, because the complaint identifies no other member or interest and makes only conclusory assertions about other members' standing. As to the third element, the Federation similarly offers only generalized assertions that suit would not require the participation of its individual members. Such conclusory pleadings cannot establish standing. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

For the foregoing reasons, we affirm the judgment of the district court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.