# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 9, 2024          Decided June 25, 2024

No. 22-5302

LEATRICE TANNER-BROWN, PERSONAL REPRESENTATIVE OF
THE ESTATE OF GEORGE W. CURLS, SR., AND OF THE CLASS OF
SIMILARLY SITUATED INDIVIDUALS AND HARVEST INSTITUTE
FREEDMEN FEDERATION, LLC, ON BEHALF OF ITSELF AND ALL
PERSONS SIMILARLY SITUATED,
APPELLANTS

v.

DEBRA A. HAALAND, SECRETARY OF THE INTERIOR AND TARA
MACLEAN SWEENEY, ASSISTANT SECRETARY INDIAN AFFAIRS,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00565)

*Percy Squire* argued the cause and filed the briefs for appellants.

*Benjamin W. Richmond*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Todd Kim*, Assistant Attorney General, and *William B. Lazarus* and *John L. Smeltzer*, Attorneys.

Before: HENDERSON, MILLETT and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellant Leatrice Tanner-Brown is a descendant of people enslaved by the Cherokee Tribe and emancipated at the end of the Civil War. Her grandfather, George Curls, received land allotments as a minor. Tanner-Brown and the Harvest Institute Freedman Federation, LLC (HIFF) brought suit seeking various remedies related to the allotments, including an accounting from the Secretary of the Interior arising from the alleged creation of a trust relationship between the federal government and Indian beneficiaries.

The district court dismissed the case for lack of standing, finding that Tanner-Brown failed to establish that she was injured by not receiving an accounting on the ground that there was no trust relationship between Curls and the federal government and that HIFF failed to satisfy the requirements for associational standing. Although HIFF cannot sustain standing, Tanner-Brown has alleged a concrete injury-in-fact sufficient to survive a motion to dismiss for lack of jurisdiction. We affirm the district court in part, reverse in part and remand the case for further proceedings.

## I. BACKGROUND

Before and during the Civil War, the Seminole, Cherokee, Choctaw, Creek and Chickasaw Tribes kept slaves and allied with the Confederacy. *Tanner-Brown v. Haaland*, 2022 WL 2643556, at *1 (D.D.C. July 8, 2022) (*Tanner-Brown I*) (citing Compl. ¶ 13); *see also Cherokee Nation v. Nash*, 267 F. Supp. 3d 86, 97 (D.D.C. 2017). These tribes, residing in the southern

United States, were sometimes called the "Five Civilized Tribes"; we use the term "Five Tribes" herein. *See Cherokee Nation*, 267 F. Supp. 3d at 90 n.3. After the Civil War, the United States entered into a series of treaties that, among other things, abolished slavery in the Five Tribes and provided certain rights (including property rights) for the formerly enslaved people (known as "Freedmen"). *Tanner-Brown I*, 2022 WL 2643556, at *1.

In 1898, the Congress enacted the Curtis Act, 30 Stat. 495, which allotted the land of the Five Tribes with certain restrictions to specific groups of individuals with some enslavement history. Ten years later, the Congress enacted the law that is central to this case. Act of May 27, 1908, 35 Stat. 312 (the 1908 Act); *see Tanner-Brown I*, 2022 WL 2643556, at *2.

Section 1 of the 1908 Act provides: "All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood *including minors* shall be free from all restrictions." 1908 Act § 1 (emphasis added); *see Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 331 (2008).[1]

Section 2 provides that lands "from which restrictions have not been removed may be leased" by the adult allottee or, if the allottee is a "minor or incompetent," by a "guardian or curator" on the allottee's behalf. 1908 Act § 2.

---

[1] "[E]nrolled" refers to the process of securing tribal membership, one means of establishing an individual's status as a Native American and/or his tribal identification. 42 C.J.S. *Indians* § 21.

Section 6 provides in relevant part:

> That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma. The Secretary of the Interior is hereby empowered, under rules and regulations to be prescribed by him, to appoint such local representatives within the State of Oklahoma who shall be citizens of that State or now domiciled therein as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors, and whenever such representative or representatives of the Secretary of the Interior shall be of [the] opinion that the estate of any minor is not being properly cared for by the guardian or curator, or that the same is in any manner being dissipated or wasted or being permitted to deteriorate in value by reason of the negligence or carelessness or incompetency of the guardian or curator, said representative or representatives of the Secretary of the Interior shall have power and it shall be their duty to report said matter in full to the proper probate court and take the necessary steps to have such matter fully investigated, and go to the further extent of prosecuting any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of said minor allottees; and it shall be the further duty of such representative or representatives to make full and complete reports to the Secretary of the Interior.

*Id.* § 6.

The Supreme Court has held that Sections 2 and 6 of the 1908 Act apply to the allotments of minors, notwithstanding the language in Section 1 removing restrictions from the allotments held by minor Freedmen. *Truskett v. Closser*, 236 U.S. 223, 229 (1915).

Appellant Leatrice Tanner-Brown is the granddaughter and personal representative of the estate of George Curls, who was the son of former Cherokee slaves and was enrolled as a Cherokee Freedman when he was five years old. *Tanner-Brown I*, 2022 WL 2643556, at *3. She alleges that her grandfather received forty-acre and twenty-acre allotment deeds from the Cherokee Tribe when he was a minor and that the allotments were leased for oil and gas drilling that generated substantial revenue. According to her complaint, the restriction against alienation of Curls' allotments (and all Freedmen allotments) were not removed by the 1908 Act so that any funds derived from the allotments should have been accounted for by the U.S. Department of the Interior (Interior) pursuant to Sections 2 and 6. She further alleges, however, that Interior has no record of these funds.

Appellant Harvest Institute Freedmen's Federation (HIFF) is a limited liability company created to "vindicat[e] the rights and interests of [] Freedmen." Compl. ¶ 9. It names Tanner-Brown as a member and purports to represent other members who are "representatives of other now deceased Freedmen with a direct personal stake in receipt of damages for breach of fiduciary duties owed to them by Defendants." *Id.* HIFF does not identify any members other than Tanner-Brown.

Tanner-Brown and HIFF have filed multiple lawsuits over the past decade on behalf of Freedmen and minor Freedmen. In 2014, they filed a putative class action on behalf of

descendants of Freedmen minor allottees of the Five Tribes, alleging that the Interior Secretary breached his fiduciary duty as to the allotments. *Tanner-Brown v. Jewell*, 153 F. Supp. 3d 102, 104 (D.D.C. 2016). The district court dismissed the suit for lack of Article III standing, finding that (1) Tanner-Brown failed to plead a concrete injury because she brought suit only in her personal capacity as a descendant of Curls and her hereditary relationship was insufficient to establish injury; (2) even if Tanner-Brown had standing, the complaint failed to allege that Curls had ever suffered a concrete, traceable injury because it did not allege that his specific allotments had oil or gas leases or any royalties therefrom; and (3) HIFF failed to plead associational standing adequately because it provided no information about its members. *Id.* at 109-13. We affirmed the district court's ruling. *Tanner-Brown v. Zinke*, 709 F. App'x 17 (D.C. Cir. 2017) (per curiam), *cert. denied* 139 S. Ct. 171 (2018).

Tanner-Brown and HIFF filed this suit in March 2021, using a theory similar to that in the 2014 suit and alleging that the Interior Secretary breached fiduciary duties under Section 6 of the 1908 Act. They sought class certification, a declaratory judgment, an order directing defendants to provide plaintiffs an accounting and attorneys' fees. *See Tanner-Brown I*, 2022 WL 2643556, at *1 n.1 (noting large portions of the 2021 complaint are "identical" to the 2014 complaint).

The district court dismissed for lack of standing. It found that Tanner-Brown provided the "necessary link" to Curls by alleging that she is the personal representative of his estate and focused its inquiry on Curls' alleged injury-in-fact. *Id.* (quoting *Zinke*, 709 F. App'x at 20). The court held that the complaint failed to allege a concrete and particularized injury traceable to the defendants because it did not allege that Curls' leases were being mismanaged or provide any basis for

believing that "had Defendants fulfilled their purported statutory duty, Mr. Curls would have received royalties or at least royalties in a greater amount than any that he did receive." *Id.* (quoting *Jewell*, 153 F. Supp. 3d at 110 n.5). The court also found that HIFF lacked standing because it failed to show two of the three requirements for associational standing: (1) that its members would have standing to sue in their own right and (2) that the participation of individual members in the lawsuit was not required for the claim asserted or relief requested. *Id.* at *6-7.

After the district court's dismissal, the plaintiffs moved to alter or amend the judgment pursuant to Rule 59(e), arguing based on common-law principles of trust law that they "cannot assert an injury sufficient to establish standing because a trust beneficiary must first receive an accounting before determining whether a trust has been mismanaged" and that "trust beneficiaries are entitled to an accounting regardless of whether an injury has been shown." *Tanner-Brown v. Haaland*, 639 F. Supp. 3d 1, 5 (D.D.C. 2022) (*Tanner-Brown II*). The district court found that plaintiffs' arguments amounted to a new version of their standing argument; nevertheless, it considered the merits "for purposes of facilitating the resolution of th[e] case" and rejected the new arguments as meritless. *Id.* It concluded that the plaintiffs failed to show that the 1908 Act creates a trust relationship between the plaintiffs and the Interior Secretary because Section 6 suggests the Secretary's accounting duties are discretionary and should not be read to create a trust relationship in the absence of any specific language indicating congressional intent to do so. *Id.* at 6-7. This appeal followed.

## II.  STANDING

"We review the district court's standing determinations de novo."  *Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir. 2016). The "irreducible constitutional minimum of standing" requires that the plaintiff suffer an injury in fact fairly traceable to the challenged conduct of the defendant that can likely be redressed by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

"The plaintiff bears the burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan*, 504 U.S. at 561).  We accept the factual allegations in the plaintiffs' complaint as true and draw all reasonable inferences from those facts in their favor.  *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015).

### A.  Tanner-Brown's Standing

Tanner-Brown's theory of standing is premised on the alleged creation of a trust relationship and attendant fiduciary duties between the Interior Secretary and the minor allottees under Section 6 of the 1908 Act.  She argues that Curls was injured by the Secretary's failure to provide an accounting of the allotment, an injury that runs to her as the representative of Curls' estate.

At the outset, the government maintains that this version of Tanner-Brown's injury-in-fact argument is forfeited because she raised it in her Rule 59(e) motion after the district court's dismissal.  But the forfeiture doctrine operates in our judicial system to avoid (1) surprise to litigants should an issue be decided on appeal "upon which they have had no opportunity to introduce evidence" and (2) the "[e]normous confusion and

interminable delay [that] would result if counsel were permitted to appeal upon points not presented to the court below." *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084-85 (D.C. Cir. 1984) (first quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941); then quoting *Johnston v. Reily*, 160 F.2d 249, 250 (D.C. Cir. 1947)). These concerns are eliminated if the district court has in fact considered the new claim. *See, e.g.*, *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) ("even if this were a claim not raised by petitioner below, we would ordinarily feel free to address it, since it was addressed by the court below" (emphasis omitted)); *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007) ("even if a party fails to raise an issue in the district court, we generally will not deem the issue waived if the district court actually considered it"). The government has had a full opportunity to respond to the plaintiffs' argument, both in the Rule 59(e) proceedings and now on appeal. We agree that it conserves judicial resources for us to rule on plaintiffs' standing theory "for purposes of facilitating the resolution of this case," as the district court concluded. *Tanner-Brown II*, 639 F. Supp. 3d at 5. Moreover, the argument Tanner-Brown pursues on appeal is evident from the face of the complaint. She asserted a claim for an accounting, alleging that "Defendants have a duty under Section 6 of the [1908 Act] to provide an accounting" and requesting that the court "order Defendants to provide Plaintiffs an accounting." Compl. ¶¶ 36-39, §§ IX-X. There is no cause to find forfeiture here.

We turn to whether Tanner-Brown has alleged a legal theory and facts sufficient to establish a cognizable injury-in-fact. *See Parker v. District of Columbia*, 478 F.3d 370, 377-78 (D.C. Cir. 2007). In conducting this analysis, we "must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *City of*

*Waukesha v. E.P.A.*, 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam).

The Supreme Court has explained that Article III injuries must be "'concrete'—that is, 'real, and not abstract.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016)). In determining whether a harm is sufficiently concrete, "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 274 (2008). "[T]raditional tangible harms, such as physical harms and monetary harms" are clear examples of concrete Article III injuries. *TransUnion*, 594 U.S. at 425. Certain intangible harms may be concrete, especially if they have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.*

The Congress may also "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan*, 504 U.S. at 578. In these cases, the court typically analyzes the rights-granting statute as part of its standing analysis to determine whether the plaintiffs have sufficiently pleaded an injury. For example, in *Friends of Animals v. Jewell*, this court considered an alleged informational injury arising from statute and explained that the plaintiff failed to plead an injury because it was "seeking to enforce a statutory deadline provision that by its terms does not require the public disclosure of information." 828 F.3d 989, 992 (D.C. Cir. 2016).

Here, Tanner-Brown has alleged that her injury is the lack of an accounting regarding property held in trust by the United States. A trustee's failure to furnish an accounting to a beneficiary is a concrete harm grounded in "basic common law

trust principles" and "traditional equit[y]." *Cobell v. Norton*, 240 F.3d 1081, 1103 (D.C. Cir. 2001); *see also id.* ("Under traditional equitable trust principles, '[t]he trustee's report must contain sufficient information for the beneficiary readily to ascertain whether the trust has been faithfully carried out.'" (quoting *White Mountain Apache Tribe of Arizona v. United States*, 26 Cl. Ct. 446, 449 (1992), *aff'd*, 5 F.3d 1506 (Fed. Cir. 1993)). Her alleged injury is thus rooted in "American history and tradition" and is the type of harm "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 424-25.

The district court rejected Tanner-Brown's alleged injury-in-fact after analyzing Section 6 of the 1908 Act. It concluded that the Secretary's statutory duties are discretionary and therefore the Act does not create a trust relationship because there can be no claim for an accounting in the absence of any duty to furnish one. *Tanner-Brown II*, 639 F. Supp. 3d at 6-7. We conclude that this approach was erroneous under established standing doctrine.

"The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Parker*, 478 F.3d at 377 (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975)). We have explained in the context of a constitutional claim that it would be "doctrinally quite unsound" to assess standing "by first extensively analyzing th[e] provision, determining that it does not provide an individual right, and then, and only then, concluding that the plaintiff lacked standing." *Id.* at 376-77. Such an approach would amount to "premature judicial involvement" and "substantive adjudication in the absence of a 'case or controversy,'" *Jud. Watch, Inc. v. U.S. Senate*, 432 F.3d 359, 364 (D.C. Cir. 2005) (Williams, J., concurring). Instead, we must consider standing

separately from the merits by assuming that the plaintiff will ultimately prevail on her legal theory. *See, e.g.*, *Warth*, 422 U.S. at 502 (assuming legal theory of complaint is cognizable when assessing standing).[2]

At oral argument, Interior urged us to adopt the reasoning in *Fletcher v. United States*, 26 F.4th 1314 (Fed. Cir. 2022). In that case, the Federal Circuit found that individual holders of Osage headrights, not simply the Tribe, had standing to pursue breach of trust claims after extensively analyzing the relevant statute and concluding that the statute gave rise to a trust relationship between the headright owners and the federal government. *Id.* at 1322-24. The Federal Circuit relied on *Lujan*, 504 U.S. at 560, to define an injury-in-fact as the "invasion of a legally protected interest," concluding that "[i]n the context of the [plaintiffs'] breach of trust claims, the plaintiffs must show the existence of a trust relationship with the government." *Fletcher*, 26 F.4th at 1322. This case is different from *Fletcher*.

The Supreme Court's use of the phrase "legally protected interest" in *Lujan* is best understood as referring to a cognizable interest rather than imposing a new requirement that the invaded interest be affirmatively protected by positive law. *See Jud. Watch*, 432 F.3d at 363 (Williams, J., concurring); *Parker*, 478 F.3d at 377. As Judge Williams persuasively explained in his concurring opinion in *Judicial Watch*, the strongest evidence for this reading is in *Lujan* itself: after referring to the

---

[2] There is a narrow exception to this general rule if the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quotation omitted). The Secretary has not argued that Tanner-Brown's claim falls into this exception and we see no reason to consider it here.

requirement of a "legally protected interest," the Supreme Court found that the "desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a *cognizable* interest for purpose of standing." *Lujan*, 504 U.S. at 562-63 (emphasis added); *see Jud. Watch*, 432 F.3d at 363 (Williams, J., concurring). At the same time, however, the *Lujan* Court did not identify any source of positive law giving rise to the cognizable interest in observing an animal species. *See Lujan*, 504 U.S. at 562-63; *Jud. Watch*, 432 F.3d at 363-64 (Williams, J., concurring).

We believe that the Secretary overreads *Fletcher*. First, there was no dispute in *Fletcher* that a trust relationship existed. *See Fletcher*, 26 F.4th at 1322-1324; Fletcher Opening Br. at 20, *Fletcher*, 26 F.4th 1314 (No. 21-1625); Government Br. at 22, *Fletcher*, 26 F.4th 1314 (No. 21-1625). In that context, both the plaintiffs and the government couched the argument about who could recover under the trust as a standing issue. Fletcher Opening Br. at 19-27, *Fletcher*, 26 F.4th 1314 (No. 21-1625); Government Br. at 46-54, *Fletcher*, 26 F.4th 1314 (Fed. Cir. 2022) (No. 21-1625); Oral Argument, *Fletcher*, 26 F.4th 1314 (No. 21-1625), ECF No. 59; *see Fletcher*, 26 F.4th at 1322. Neither side argued that the question of who held the trust interest should be addressed as a merits question rather than a standing question and so that question was never joined in *Fletcher*.

Here, however, the existence of a trust at all is the merits question before us and the parties expressly dispute whether that question is best framed as a standing or merits inquiry. Under our precedent and the Supreme Court's, whether a trust relationship exists between a plaintiff and the federal government is best characterized as a substantive merits decision that should not be reached unless and until there is

Article III standing.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89-102 (1998).

The standing question before us, then, requires that we assume that Tanner-Brown is correct on her legal theory that the statute could give rise to a trust relationship with attendant fiduciary duties under certain circumstances, including if a guardian or representative were appointed by the Secretary or the history of the government's control created a trust.  On her theory of the case and the facts alleged in the complaint, she has asserted a cognizable injury-in-fact, as explained *supra*. Tanner-Brown also satisfies the causation and redressability requirements of Article III standing.  Her injury of not having received an accounting to which she is entitled is fairly traceable to the Secretary's failure to provide one and could be redressed by a favorable decision on the merits.  We therefore conclude that she has standing to assert her claim for an accounting.

## B.  HIFF's Standing

HIFF claims associational standing, requiring it to show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  The first prong is satisfied because HIFF identifies Tanner-Brown as a member and Tanner-Brown has met Article III standing requirements. Interior does not dispute the second prong.

Our analysis therefore focuses on the third prong, whether the claim asserted and relief requested require individualized determinations.  This requirement is prudential and reflects a

"judicially self-imposed limit on the exercise of federal jurisdiction" rather than a "constitutional mandate," focusing instead on "matters of administrative convenience and efficiency." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996) (cleaned up).

As the district court explained, the nature of this suit "necessarily requires 'consideration of the individual circumstances of any aggrieved member of the organization.'" *Tanner-Brown I*, 2022 WL 2643556, at \*7 (quoting *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015)). Here, given the nature of the trust claim, a claim for an accounting requires information about an individual allottee's property, its lease terms and any earlier appointment of a representative or legally analogous action by the Secretary. HIFF does not explain how the court can "order Defendants to provide Plaintiffs an accounting," Compl. § X(c)—the relief requested in the complaint—without making individualized findings regarding specific allotments held in trust for specific allottees.

Moreover, HIFF does not purport to represent the interests of any member not already party to the suit. HIFF identifies Tanner-Brown as its sole named member and its standing rests wholly on her claim. The Third Circuit considered a similar fact pattern in which the association's "claim to standing is grounded on the claims of its members . . . who are also plaintiffs in the lawsuit[,] . . . [u]nlike other cases conferring standing on organizations." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 290 (3d Cir. 2014). The *Blunt* court denied associational standing not only because the claims required individualized assessments but also because it would not further "'administrative convenience and efficiency'" to permit the association to litigate on behalf of its members "when those members are already parties to the lawsuit in their own right."

*Id.* (quoting *United Food*, 517 U.S. at 557). So too here. The claim for an accounting pursuant to Section 6 requires individual determinations and HIFF's participation in the suit would be redundant with Tanner-Brown's. Accordingly, we affirm the district court's holding that HIFF does not have standing to pursue this litigation.

## III. MERITS

Interior urges us to affirm the district court's dismissal on the alternate ground that Tanner-Brown has failed to state a claim for which relief could be granted under Federal Rule of Civil Procedure 12(b)(6), arguing that Section 6 does not impose any enforceable fiduciary duties on the Secretary and so there is no legal obligation to provide an accounting. This argument raises factual questions we cannot resolve at this juncture.

Although there is a "general trust relationship between the United States and the Indian People," *United States v. Mitchell*, 463 U.S. 206, 225 (1983), the Supreme Court has explained that this relationship in itself does not give rise to any fiduciary obligation of the federal government. Rather, there must be "specific rights-creating or duty-imposing statutory or regulatory prescriptions." *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003). "The Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 177 (2011) (footnote omitted).

Section 6 details the extent of the Secretary's duties owed to minor allottees. The Secretary is "empowered" to appoint "local representatives" "as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors." 1908 Act § 6. The

statute thus initially confers a discretionary power: the Secretary may choose, but is not obligated, to appoint a representative if she deems it necessary. If the representative then concludes that a minor's allotment is not being properly cared for, he "shall have power and it shall be [his] duty" to report the matter to the probate court, have the matter fully investigated, prosecute any remedy necessary to protect the minor allottee's interests and "make full and complete reports to the Secretary." *Id.* Once the Secretary takes the discretionary step of appointing a representative and the representative forms the opinion that the allotment is not being properly cared for, then, there are certain statutory duties owed to the minor allottees.

We do not know if the federal government owes any duty to Curls' estate because we do not know whether the Secretary appointed a representative to oversee his allotment pursuant to Section 6. Tanner-Brown seeks an accounting because she lacks information that is likely to be in Interior's possession regarding Curls' estate—including whether a representative was appointed. We do know that federal courts were involved with Curls to some extent because Tanner-Brown submitted public filings from the U.S. Court for the Indian Territory in a case captioned *In the matter of the Guardianship of Willie Curls, Edward Curls, James Curls, George Curls, Stephenia Curls, Beatrice Curls and Julius Curls*. *See* Mem. in Opp. to the Gov't's Mot. to Dismiss, App. F at 2, 20, 69, *Tanner-Brown v. de la Vega*, Civ. No. 14-1065 (D.D.C. Oct. 21, 2021), ECF No. 18-6. But we cannot speak to the factual and legal import of these filings given the lack of information available to Tanner-Brown, especially in the absence of any factual findings on the merits by the district court.

At this stage, we do not decide the extent of the federal government's fiduciary duties, if any, owed to Curls' estate.

"Given the state of the record and the factual intricacies intertwined with [Tanner-Brown's] allegations, we are unwilling to delve into questions that the district court did not address." *Jones v. Bernanke*, 557 F.3d 670, 681 (D.C. Cir. 2009) (cleaned up). We remand for the district court to consider the merits of Tanner-Brown's allegations and the relevant record documents in the first instance.

Interior also asks us to affirm the district court's dismissal on the alternative ground that the plaintiffs' suit is time-barred, arguing that the six-year statute of limitations began to run when Curls knew he had not been provided with an accounting (in 1918, when he turned twenty-one) or when Interior took the legal position in 2007 that it did not owe a trust duty under Section 6. The statute of limitations on claims "concerning losses to or mismanagement of trust funds," however, does not run "until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, 128 Stat. 5, 305-06; *see Jewell*, 153 F. Supp. 3d at 107 n.3. Because this statute may affect the statute of limitations analysis and the district court did not reach this argument, "we will follow our usual (although hardly universal) practice of declining to address arguments unaddressed by the district court." *Pollack v. Hogan*, 703 F.3d 117, 121 (D.C. Cir. 2012) (per curiam). We leave the legal and factual questions involving the statute of limitations for consideration on remand.

\* \* \*

For the foregoing reasons, we reverse the district court's decision that Tanner-Brown does not have Article III standing and affirm its decision that HIFF lacks associational standing.

We remand for further proceedings consistent with this opinion.

*So ordered.*